741 P.2d 242

Ruth HAMILTON, Charles M. Monroe, and Dora Quesada (Citizen Defendants below), Petitioners,

v.

SUPERIOR COURT for the State of Arizona, In and For the COUNTY OF MARICOPA, Hon. Barry Schneider, a Judge thereof; the City of Phoenix, a body politic (City Defendants below); Marvin Andrews, in his official capacity as Phoenix City Manager, Respondents,

The POINTE RESORTS, INC., an Arizona corporation; and Gosnell Development Corporation, an Arizona corporation, Respondents-Real Parties in Interest.

No. CV–87–0150–SA.

Supreme Court of Arizona, En Banc.

May 27, 1987.

Cox and Cox by Z. Simpson Cox, Phoenix, for petitioners.

Roderick G. McDougall, Phoenix City Atty. by Roderick G. McDougall, Larry F. Felix, Phoenix, for respondents City of Phoenix and Andrews.

Gammage & Burnham by Grady Gammage, Jr., Phoenix, for real parties in interest.

FELDMAN, Vice Chief Justice.

Ruth Hamilton, Charles M. Monroe, and Dora Quesada (petitioners) brought a special action[1] to enjoin the City of Phoenix from leasing Phoenix Mountain Preserve land to Gosnell Development Corporation (GDC) without voter approval. On May 5, 1987, we vacated the trial court's grant of summary judgment in favor of the City and GDC, and remanded the case to the trial court to determine the status of the transaction between GDC and the City as of the date an amendment to the City Charter

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona

Rules of Procedure for Special Actions, 17A A.R.S.

became effective. We stated in that order that a more detailed opinion would be forthcoming.

We accepted jurisdiction pursuant to Rule 4, Ariz.R.P.Sp.Act. and Ariz. Const. art. 6, § 5 because, absent judicial intervention, the City is ready to execute a trade and leaseback agreement with GDC, and GDC is ready to begin construction. Petitioners had no equally plain, speedy, and adequate remedy by appeal because any delay would result in irreparable injury to the desert land. In addition, this is a matter of great public interest and concern. *See, e.g., King v. Superior Court*, 138 Ariz. 147, 149–50, 673 P.2d 787, 789–90 (1983).

## BACKGROUND

The facts we considered relevant to the issues raised are as follows. In November 1985, Phoenix voters adopted a proposition that added a provision to the City Charter:

In no event shall any real property within the City Mountain Preserve be sold, traded or otherwise alienated, redesignated or deleted from the Mountain Preserve except by approval of a majority of the electors voting thereon, provided that Mountain Preserve property may be traded if such trade is approved by the Council by ordinance prior to January 1, 1989 in accordance with the provisions set forth in this Chapter.

On March 26, 1986, the Phoenix Council adopted Ordinance No. S 16367, authorizing the city manager or his designee "to enter into an agreement and execute necessary documents to effect a trade of 29 acres of City-owned land located at the southeast edge of South Mountain Park ... for 34 acres of land owned by Gosnell Development Corporation." The ordinance was conditioned on the requirement that GDC would then donate the 29 acres back to Phoenix and the City would execute a 35–year lease granting GDC the right to use the land for five holes of a public golf course. The lease would give GDC an option to renew for another thirty-five years. No form of lease is attached to the ordinance. No rental payments are specified by the ordinance. No legal description is given for the land involved.

The day the Council adopted the ordinance, opponents began circulating initiative petitions to close the "window" whereby the Council could approve trades without voter approval until January 1, 1989. The petition drive was successful and on December 9, 1986, voters overwhelmingly passed the following initiative:

AN INITIATIVE MEASURE TO PREVENT SALE, TRADE, ALIENATION, REDESIGNATION, LEASE OR OTHER DELETION OR REMOVAL OF ANY CITY MOUNTAIN PRESERVE LAND WITHOUT APPROVAL OF A MAJORITY OF ELECTORS VOTING THEREON.

Notwithstanding any other provision of the Charter of the City of Phoenix, no land within any City Mountain Preserve, as that term is defined in Chapter 26 of the Charter of the City of Phoenix, shall be sold, traded, alienated, redesignated, leased, or otherwise deleted or removed from the Mountain Preserve except by approval of a majority of electors voting thereon.

The Charter amendment became law on January 14, 1987, and will be referred to as the 1987 initiative.

Petitioners contended that the 1987 initiative prohibits the City from consummating the land trade with GDC because the deal was not completed on January 14, 1987. *See In re Dos Cabezas Power District v. Arizona Public Service Co.*, 17 Ariz.App. 414, 498 P.2d 488 (1972). On the other hand, GDC argued that the step required for trade approval in accordance with the Charter had been completed on March 26, 1986—the date of the ordinance authorizing the trade—and the deal could not be retroactively invalidated by the 1987 initiative passed nine months later. Agreeing with GDC, the trial court held that the initiative did not affect the already-authorized trade. The court distinguished *Dos Cabezas* on the ground that, in *Dos Cabezas* "numerous discretionary procedures" remained to be performed by the legislative body, while in the case before us only min-

isterial acts remain to be performed by the city manager.

## DISCUSSION

### A. *Dos Cabezas*

We disagree with the trial court's analysis. In *Dos Cabezas,* the Cochise Board of Supervisors granted a petition for formation of a power district. While two power companies serving territory within the proposed district's boundaries were appealing the board's decision, the legislature amended the operative statute to prohibit the formation of a new power district that would include territory served by another electrical power-producing entity. The two utilities argued that the district could not be created because of the new law. The court of appeals stated the issue as: "What happens when a statute is amended while proceedings are going on under the old statute?" 17 Ariz.App. at 420, 498 P.2d at 494. The court held that if proceedings under a statute are "pending" and not completed when the statute is amended, the amended statute governs. *Id.*

The trial court attempted to distinguish the cases on the ground that in *Dos Cabezas* the Board of Supervisors had numerous discretionary procedures to perform before the new power district could be created, while in the instant case the City Council had completed its work and had delegated ministerial power to the city manager. We disagree and believe the court's analysis in *Dos Cabezas* turned on whether all the steps to consummate the creation of the district had been completed and not whether the remaining steps were ministerial or discretionary in nature or to be taken by the legislative body itself or delegated to others.

### B. *Resolution*

#### 1. *Law*

■ The text of the 1987 initiative is clear and unambiguous. No mountain preserve land "shall be ... traded, alienated, ... leased ... except by approval" of the voters. GDC persuasively argues that the 1987 initiative can do no more than forbid future action. As opposed to a referendum, an initiative cannot repeal the preceding charter provision nor act retroactively to undo that which was legally done under the former provision. Therefore, the 1987 initiative can be given only prospective effect. We agree. By its absolute terms, however, the initiative forbids the doing of that which was not yet done at the time the initiative became law. In our view, therefore, the text of the 1987 initiative, the principles of *Dos Cabezas,* and logic provide an uncomplicated test. If the "deal was done" prior to January 14, 1987, it cannot be undone by the 1987 initiative. If it was not done but was pending on the effective date of the 1987 initiative, then the new law applies to prohibit consummation of the trade and leaseback without voter approval.

When is a transaction no longer pending so that it must be considered complete and outside the reach of the 1987 initiative? If the transaction had reached the point where, if one of the parties had changed its mind as to the terms or decided to withdraw, the other party could require the first to perform, we believe the transaction would have to be considered as no longer pending and as having been substantially completed, even though all the formal documents might not have been executed. If, on the other hand, the transaction was still at the stage where either of the parties could have "backed out" without legal consequence on the effective date of the 1987 initiative, then we believe the language of the new law would forbid consummation. We are constrained by the clear intent expressed in the words of the 1987 initiative. The electorate wished to do more than require voter approval for only those transactions which had not yet reached legislative approval in principle. The obvious intent of the words is to stop every transaction that could be stopped so that the people would have the right to express their approval or disapproval.

#### 2. *Application to the Facts*

We turn now to apply the foregoing principles to the facts of this case. As with

many uncomplicated, bright-line tests, the legal principle is easy to formulate and difficult to apply. GDC contends that the City Council's approval of the trade by ordinance S 16367 was all that was required to complete the deal; any other steps, such as executing the lease agreement, and signing and recording deeds, are solely administrative. Acknowledging that the ordinance does not embody every conceivable term, GDC argues that it does contain all essential terms. In addition, GDC says that more detailed terms were agreed on months before but were not executed because of a conflict with the Bureau of Land Management.

Petitioners contend that the ordinance merely authorized the city manager or a designee to negotiate and enter into an agreement and is not a contract or a grant of any right to mountain preserve land. "The simple fact is that the lease ... is subject to negotiation up to the moment it is signed by the parties," according to petitioners. They support this argument by emphasizing some of the vague wording of the ordinance, in which the land to be traded is "generally depicted" with "exact legal descriptions" to be determined later. Petitioners claim that these "descriptions" have changed several times since passage of the ordinance.

The record before us is inadequate to determine whether the transaction had progressed to the point at which an enforceable agreement had been made as of the effective date of the 1987 initiative. Apparently there had been negotiations and some agreements had been reached by designees of the city manager, who was authorized by ordinance S 16367 to enter into the trade and lease agreement with GDC. There is a proposed lease agreement in the record, which contains many terms not specified in the ordinance; however, the agreement is not dated and not signed. An April 8, 1987 letter from GDC's attorneys accompanying the proposed lease states that its wording has been agreed to by the city attorney's office. Because the lease is undated, however, we cannot tell when these terms were agreed upon. We also do not know whether further council approval was required.

Thus, as we stated in our order, on the present record we cannot determine whether the transaction "had been consummated or reached a point at which all terms had been agreed upon so that the transaction could have been enforced...." At oral argument, GDC stated that the trial court never inquired as to the status of the transaction because of its interpretation of *Dos Cabezas*. We therefore have instructed the trial court to consider any available relevant evidence concerning the status of the transaction when the 1987 initiative went into effect. The trial court should determine whether this deal was "complete," in which case the 1987 initiative may not operate retroactively to invalidate the ordinance.

## CONCLUSION

Jurisdiction of the petition for special action was accepted and relief granted. Our previous order vacated the trial court's April 7, 1987 order granting summary judgment in favor of the City and GDC. We remanded the case to the trial court to determine the status of the transaction as of the effective date of the 1987 initiative. As explained in this opinion, the trial court was ordered to take evidence to determine whether, on the effective date of the 1987 initiative, an agreement had been reached so that, legally or equitably, GDC could have required the City to proceed with the trade and leaseback. If so, the 1987 initiative could not undo that which had been done. If no such agreement had been reached, the 1987 initiative prevents consummation absent approval by the electorate.

GORDON, C.J., and HOLOHAN, J., concur.

CAMERON, Justice, dissenting.

I dissent. I do not believe it is necessary to send this matter back to the trial court for a redetermination of facts and issues that the trial court has already made. I do not believe that the trade was invalidated retroactively by the 1987 initiative. The

trade was approved by the Council prior to 1 January 1989, and that was all that was necessary to exempt it from voter approval. Whether there was a specifically enforceable contract between the City and Gosnell Development Corporation is a separate, and unrelated, question. I agree with the trial court that the initiative did not affect the already authorized trade. I believe, as the trial court found, that the "deal was done" prior to 14 January 1987, and it cannot now be undone by the 1987 initiative. I would affirm the decision of the trial court.

I agree with the majority that in applying the principles to the facts, the legal principle is easy to formulate but difficult to apply. We need not do that. The trial court has already done that and I find no abuse of discretion or incorrect application of the law to the facts. I would deny the petition for special action.

MOELLER, J., joins in Justice CAMERON's dissent.