975 P.2d 94

**STATE of Arizona, Appellee.**

v.

**Efren MEDINA, Appellant.**

**No. CR–96–0289–AP.**

Supreme Court of Arizona, En Banc.

March 4, 1999.

Janet A. Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals, J. Randall Jue, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Neal W. Bassett, Phoenix, Attorney for Appellant.

## OPINION

ZLAKET, Chief Justice.

¶ 1  At approximately 12:30 a.m. on September 30, 1993, Frazier Giles got out of bed to let some fresh air into his Phoenix townhouse. He opened a window, glanced across the street, and noticed someone sitting in his neighbor's car. The headlights were on and the driver's door was open. Next to the car, he saw what he thought was a "pile of rags." Not thinking much about it, he went back to bed.

¶ 2  A few minutes later, Giles heard someone say, "Please don't hit me. Don't hit me. Don't. Don't." He got up again and looked out the window, but observed the same scene as before. As Giles started back to bed, he noticed another car drive up and stop next to his neighbor's vehicle. The driver spoke to the person in the parked car and then "raced off." The occupant of the neighbor's automobile turned off the headlights, got out of the vehicle, stomped on the "pile of rags," and pulled it into the street. At that point, Giles realized that the "pile of rags" was actually a human being. When the other car returned, the man who had just moved the body ran in front of the vehicle "like, 'Oh, boy, this is going to be fun,'"[1] and hopped inside. The car sped away, but quickly came "racing" back and ran over the body. Giles then left the window and phoned the police.

---

1.  The record reflects that the defense made no    objection to this characterization by Mr. Giles.

¶ 3 Approximately one week later Efren Medina, Ernie Aro, and Kevin Martinez were arrested for the murder of Carle Hodge. Medina's girlfriend, Angela Calderon, had contacted the police with information about the killing. Defendant Medina was charged with first-degree murder, burglary in the third degree, and aggravated robbery.

¶ 4 At trial, Calderon testified that on the night of the murder, she and a friend were sitting in her front yard. At about 2:15 a.m., the three men arrived in the defendant's white Mercury. She saw Medina step from the driver's side and Aro from the passenger door. They were laughing and talking about "speed bumps." When she asked the defendant what he meant, he told her to "watch the news."

¶ 5 Later that morning, the defendant met Calderon at a friend's house. He disclosed that he and his associates had done something wrong and he was scared. Sometime later, he told her that they had intended to steal a car and its radio, but ended up beating and running over an "old man." According to Calderon, Medina admitted pulling the victim out of the car and kicking him in the head. Aro drove Medina's car around the block. When he returned, Medina told him to "scoot over" and got in the car. They drove off, then came back and ran over the victim. Medina told her that he drove over the man three times.

¶ 6 An investigator found a white plastic bag filled with gold paint at the murder scene, along with several scattered turquoise stones. Blood stains and gold paint marks were on the roadway, smeared by the tires of the defendant's vehicle. The glove compartment of the victim's car had been "ransacked," and the radio appeared to have been tampered with. The knobs had been pulled off, but the unit was still in place. Defendant's fingerprints were found on the car.

¶ 7 Police discovered the victim's blood, tissue, hair, Seiko watch, and a fragment of his clothing on the undercarriage of the defendant's automobile. The turquoise stones collected at the scene matched those missing from the watch band. Spots of blood consistent with the victim's were detected on the defendant's shoe. A second white plastic bag filled with gold paint was later discovered in the defendant's bedroom, along with two small speakers and a knob from a car window crank. The significance of the latter items was never clearly demonstrated at trial because the state had released the victim's car before any connection could be established.

¶ 8 A jury found Medina guilty on all counts. The trial judge sentenced him to aggravated terms of five years for the burglary, seven years for the robbery, and to death for the murder. Defendant appeals from his convictions and sentences. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3); A.R.S. § 13–4031; Ariz. R.Crim. P. 26.15 and 31.2(b).

## TRIAL ISSUES

### Recusal

¶ 9 The defense contends that the judge should have recused himself from this case because he had presided over an earlier aggravated assault and robbery trial of the defendant. Medina was convicted of those charges, ultimately leading to a finding of the (F)(2) aggravating circumstance here. *See* A.R.S. § 13–703(F)(2) (previous conviction of a serious offense). In addition, because defendant killed Mr. Hodge while on release pending trial of the earlier charges, there was a finding of the (F)(7) aggravator. A.R.S. § 13–703(F)(7) (murder committed while in custody or on authorized release).

¶ 10 Defendant claims that the trial judge's failure to recuse himself violated his due process rights under the federal and state constitutions. Paradoxically, he admits that there is "absolutely no reason to question the fairness of this judge." He also acknowledges that any judge would have become aware of the prior convictions, but contends that there is an "appearance of unfairness" here that should result in a finding of fundamental error.

¶ 11 A defendant may move for a new trial based on the court's lack of impartiality. *See State v. Perkins*, 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984), *overruled on other grounds by State v. Noble*, 152 Ariz.

284, 731 P.2d 1228 (1987); Ariz. R.Crim. P. 24.1(c)(5). It is well established, however, that a "trial judge is presumed to be free of bias and prejudice." *State v. Rossi*, 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987). To rebut this presumption, a party must set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced. *Id.*; Ariz. R.Crim. P. 10.1.

■ ¶ 12 Medina did not file a Rule 10.1 motion. He also failed to move for a new trial. He did file a "Motion to Voir Dire Judge Hauser," which was denied. We have held that a defendant's constitutional protections do not include the right to question a judge regarding possible bias or prejudice. *Rossi*, 154 Ariz. at 248, 741 P.2d at 1226. Permission to do so must be granted sparingly and only in the presence of specific allegations, not "mere speculation, suspicion, apprehension, or imagination." *Id.* Otherwise, judges would be continuously vulnerable to frivolous attacks. *Id.* As noted in *Rossi*, Rule 10.1 is adequate to safeguard the constitutional right to a fair trial in front of an impartial tribunal. *Id.*

¶ 13 Defendant offers no reason to question the lower court's impartiality. That this judge presided over his aggravated assault and robbery trial is not enough. There was simply no basis for recusal.

**Early Morning Wake–Up**

■ ¶ 14 The county jail had a practice of waking inmates at 1:30 a.m. on the day of their court appearances and transferring them to a holding cell, regardless of the scheduled time for their hearings. Defendant contends that this procedure violated his due process rights by causing him to suffer from lack of rest throughout the trial. During a break in jury selection, defense counsel asked that the court order the jail to take defendant from his cell later in the day, so he could get more sleep at night. He argued that jurors would be "puzzled" by a defendant who dozed off in the middle of the proceedings. The judge denied this request, noting that Medina had been actively participating at trial by taking notes and conferring with his attorney. He suggested that defense counsel see the jail commander if a change in the schedule was desired.

¶ 15 The record contains little else regarding this matter. There is no evidence that the jail continued transferring the defendant twelve hours in advance of his trial each day, and the defense never complained again. Medina says that raising the issue a second time would have been futile because the court had already said it was "not going to interfere with how the jail runs its operations." In any event, however, nothing in the record suggests that he was sleeping through trial or was otherwise inattentive. Defendant's argument is meritless.

**Refusal to Strike Juror**

■ %¶ 16 Medina next argues that the trial court's failure to strike juror Salvatore Palmeri for cause requires reversal. This panelist was one of many questioned individually in chambers about news reports concerning the case. The defense cites Palmeri's answers to various queries by the court. For example, when asked whether he would be able to decide the case based on the evidence, Palmeri responded, "I would probably have a preconceived notion of, you know, say guilty until I heard, you know, what transpired. I don't know. I might turn it around completely." The prospective juror also expressed surprise at being advised that a criminal defendant does not have to produce witnesses, is under no obligation to testify, and cannot be penalized for remaining silent. Toward the end of the questioning, the prosecutor asked Palmeri "as you sit here with what you know about the case and what has been be [sic] discussed, do you believe the defendant now is innocent, guilty or you are not sure?" Palmeri answered, "I'm not sure." Medina argues that this response shows that the juror could not accord him the presumption of innocence.

¶ 17 Defense counsel moved to strike Palmeri for cause. The judge denied the motion, noting that the prospective juror's reaction was similar to that of others unfamiliar with the criminal justice system. Moreover, as the court observed, Palmeri ultimately expressed a willingness to follow

the rules. Although the defense removed him with a peremptory challenge, we must nevertheless decide if the trial judge erred in refusing to grant the challenge for cause. *See State v. Huerta,* 175 Ariz. 262, 267, 855 P.2d 776, 781 (1993) ("The prejudice of having one less peremptory challenge than the other side is enough to mandate reversal.").

¶ 18   A trial court's decision not to excuse a juror for cause will be set aside only for a clear abuse of discretion. *State v. Detrich,* 188 Ariz. 57, 66, 932 P.2d 1328, 1337 (1997), *cert. denied,* — U.S. —, 118 S.Ct. 202, 139 L.Ed.2d 139 (1997). This is true because the judge is in the best position to observe a potential juror's demeanor and credibility. *State v. Lavers,* 168 Ariz. 376, 390, 814 P.2d 333, 347 (1991). The party making a challenge has the burden of showing that the prospective juror is unable to render a fair and impartial verdict based on evidence to be presented at trial. *State v. Comer,* 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990).

¶ 19   A juror with "prior knowledge of a case or preconceived notions concerning the defendant's guilt" is not automatically disqualified. *Id.* Voir dire may be used to rehabilitate one whose qualifications have been questioned. *Id.* Palmeri ultimately acknowledged that the state was required to prove the case beyond a reasonable doubt. He also said, "I would like to think that I would be a fair and impartial juror." In the end, Palmeri agreed that he would be able to listen to all of the evidence and wait until the completion of trial to make up his mind. We conclude that no error occurred here. *See, e.g., Lavers,* 168 Ariz. at 390–91, 814 P.2d at 347–48 (upholding trial court's refusal to strike juror who said news reports would haunt his memory but he could decide case based solely on evidence admitted at trial); *Comer,* 165 Ariz. at 423–24, 799 P.2d at 343–44 (finding no error in refusing to strike juror who said defendant was probably guilty, but later stated he could try to form a final opinion based on evidence); *State v. Tison,* 129 Ariz. 526, 533, 633 P.2d 335, 342 (1981) (upholding trial court's decision not to excuse juror who expressed opinion that de-

fendant was likely guilty, but said she could judge case on evidence presented).

## SENTENCING ISSUES

### Victim's Age

¶ 20   A.R.S. § 13–703(F)(9) establishes an aggravating circumstance when the defendant is an adult at the time of the offense and the victim is seventy years of age or older. Defendant contends that the state failed to prove the victim's age beyond a reasonable doubt. He argues that the evidence presented would not have satisfied the requirements for a senior citizen discount at a Denny's Restaurant. He believes a birth certificate, driver's license, or "some other reliable proof" was needed.

¶ 21   At trial, the victim's girlfriend and the medical examiner both testified that Carle Hodge was seventy-one years old at the time of the murder. The trial judge found this evidence sufficient, stating at sentencing that the victim was born on November 12, 1921, making him seventy-one years, ten months old. Medina did not dispute the victim's age during the trial or at the aggravation/mitigation hearing. More significantly, however, the defendant's own sentencing memorandum stated, "[i]t is true that Mr. Hodge was 71 years old when this offense occurred." Defendant's argument is without merit.

### Lack of Knowledge of Victim's Age

¶ 22   Medina further contends that the (F)(9) aggravator should apply only where the state proves that the defendant was aware of the victim's age. He points to the (F)(10) circumstance, murder of a police officer, which specifically requires that the defendant *know* of the victim's status. The same rule, he argues, should apply here. We disagree.

¶ 23   When statutory language is plain, there is no need for judicial construction. *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). Here, the subsection in question is clear: "The defendant was an adult at the time the offense was committed or was tried as an adult and the victim was under fifteen years of age or was seventy years of age or older." A.R.S. § 13–

703(F)(9). If the legislature had intended to include knowledge as an element of (F)(9), it certainly could have done so. A.R.S. § 13–703(F)(10), which requires that *"the defendant knew, or should have known,* that the victim was a peace officer," does not help the defendant. (Emphasis added). In fact, the absence of a knowledge requirement in (F)(9), when compared to (F)(10), shows that the legislature deliberately intended it to apply whether or not the defendant knows the age of the victim. *See City of Flagstaff v. Mangum,* 164 Ariz. 395, 398, 793 P.2d 548, 551 (1990) ("Where the legislature uses a term within one statute and excludes it from another, the term usually will not be read into the provision from which it was excluded.").

### Double Weighing

¶ 24   In support of its finding that this murder was especially heinous, cruel, or depraved, A.R.S. § 13–703(F)(6), the trial court determined that it was senseless. It found that the killing was not necessary to "complete the taking of Mr. Hodge's vehicle, since Mr. Hodge would have been unable to resist the force the defendant, who was much younger and stronger, used." Because the victim's age was also identified as an independent aggravating circumstance, *supra* at ¶¶ 20–21, the defendant argues that the court "double counted" it as a factor in finding that the killing was senseless.

¶ 25   Although a trial judge may use one fact to establish two aggravators, he or she cannot weigh the victim's age twice in balancing aggravating and mitigating circumstances. *State v. Styers,* 177 Ariz. 104, 116, 865 P.2d 765, 777 (1993). We presume, however, that the court here made proper use of this fact. *Id.* The defendant contends that we should not indulge in such a presumption because this judge had not previously handled a death penalty case. He asserts that sentencing courts should be required to state on the record that they are not weighing factors twice.

¶ 26   The state responds that the trial court did not use the victim's age *per se* to establish senselessness. Rather, the judge only considered the relative abilities of the defendant and victim as evidenced by the disparity in their ages. That Mr. Hodge was over seventy, it argues, is of little consequence with respect to this finding, the important fact being that the defendant was "much younger and stronger." We agree with the state. Nothing in the special verdict suggests that the court weighed the victim's age twice. Moreover, the defendant makes no specific allegations in support of his position, merely general observations of the court's inexperience in these matters. These are insufficient.

### Pecuniary Gain

¶ 27   The (F)(5) circumstance is present when pecuniary gain is a motive for murder. *State v. Mann,* 188 Ariz. 220, 227, 934 P.2d 784, 791 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 238, 139 L.Ed.2d 169 (1997). Such a finding "may be based on tangible evidence or strong circumstantial inference." *State v. Hyde,* 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996). Here, Medina was convicted of aggravated robbery as well as murder. This alone, however, does not establish pecuniary gain as a reason for the killing. *See State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991).

¶ 28   Defendant argues that the evidence does not support a finding of the (F)(5) aggravator beyond a reasonable doubt. There is no proof, he says, that the murder resulted from a desire to steal. The state, on the other hand, claims that "substantial evidence" supports a pecuniary gain finding. For example, the radio knobs were missing, someone had tried to remove the stereo, and the defendant admitted to his girlfriend that he wanted to steal Mr. Hodge's car and/or radio.

¶ 29   In his special verdict, the sentencing judge found the following:

The evidence at trial proves beyond a reasonable doubt that the defendant and his two companions intended to steal Mr. Hodge's automobile. Defendant beat Mr. Hodge, removed him from the vehicle, and kicked and beat him again on the ground. Defendant told Angela Calderon that he attempted to hot-wire the vehicle so that

he and his companions could drive it until the fuel was exhausted and then sell it. The defendant's objective was to steal the vehicle, and to accomplish this he beat and killed the victim to separate him from his property.

¶ 30 Other facts, however, cast doubt on the (F)(5) finding. As the probation officer noted in the presentence report, "[t]he present offense has no motive; the victim still had money in his pocket and his car was not stolen." Moreover, Mr. Hodge was already incapacitated from the beating he had suffered and could not have prevented the taking of his car or radio. Thus, while the reason for *beating* him may have been a desire to steal, the same is not necessarily true of the homicide. It is just as likely that Medina drove over the victim for amusement. In fact, as noted earlier, Mr. Giles testified that the defendant scampered to the car "like, 'Oh, boy, this is going to be fun.' " The victim was run over two or three times, and no apparent attempt was thereafter made to steal the car or the radio.

¶ 31 In *State v. LaGrand,* we stated that "[w]hen the defendant comes to rob, the defendant expects pecuniary gain and this desire infects all other conduct of the defendant." 153 Ariz. 21, 35, 734 P.2d 563, 577 (1987). The present case, however, is unlike *LaGrand,* where "the attempted robbery permeated the entire conduct of the defendant." *Id.* at 36, 734 P.2d at 578. Rather, it is similar to *State v. Rienhardt,* 190 Ariz. 579, 591, 951 P.2d 454, 466 (1997), *cert. denied,* ___ U.S. ___, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998), where the killing was attenuated from any pecuniary gain motive. The victim in *Rienhardt,* who was being held as collateral, was killed after his friend failed to return with either drugs or money. *Id.* In that context, we noted that the murder was "removed in time and place from the underlying drug deal." *Id.* Similarly, in the present case, the killing was detached from and seemingly unrelated to Medina's earlier attempt to steal.

¶ 32 The existence of an economic motive at some point during the events surrounding a murder is not enough to establish (F)(5). There must be a connection between the motive and the killing. *See Greenway,* 170 Ariz. at 164, 823 P.2d at 31 ("Proving a taking in a robbery does not necessarily prove the motivation for a murder....."); *State v. Gillies,* 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983) ("Without some tangible evidence, or strong circumstantial inference, it is not for the sentencing court to conclude that because money and items were taken, the purpose of the murder was pecuniary gain."). Even if the defendant's initial intention was to take the car or radio, we cannot conclude that his motive for later running over and killing the victim was pecuniary gain. The state did not prove the (F)(5) aggravator beyond a reasonable doubt.

### Heinous, Cruel, or Depraved

¶ 33 In addition to the aggravators already discussed, the trial court found that this murder was especially cruel and was committed in a heinous and depraved manner. *See* A.R.S. § 13–703(F)(6). Under our jurisprudence, each of these elements is independently sufficient to establish this aggravator. *State v. Laird,* 186 Ariz. 203, 208, 920 P.2d 769, 774 (1996).

¶ 34 When the victim consciously suffers mental or physical anguish, a murder is especially cruel. *State v. Schackart,* 190 Ariz. 238, 248, 947 P.2d 315, 325 (1997), *cert. denied,* ___ U.S. ___, 119 S.Ct. 149, 142 L.Ed.2d 122 (1998). Significant uncertainty about one's ultimate fate can cause mental anguish. *Id.* In our analysis of cruelty, we look to the "totality of circumstances surrounding the murder and not just the final act that killed the victim." *Id.* Here, the victim's cries of "Please don't hit me. Don't hit me. Don't. Don't," evidence both physical and mental pain and suffering. We agree that this killing was especially cruel.

¶ 35 The "heinous or depraved" prong of (F)(6) focuses on the "defendant's state of mind at the time of the offense, as reflected by his words and acts." *State v. Fulminante,* 161 Ariz. 237, 255, 778 P.2d 602, 620 (1988). In *State v. Gretzler,* we identified five factors which may lead to a finding of heinousness or depravity. They are: 1) relishing of the murder by the defendant; 2)

infliction of gratuitous violence on the victim; 3) mutilation of the victim; 4) senselessness of the crime; and 5) helplessness of the victim. 135 Ariz. 42, 51–53, 659 P.2d 1, 10–12 (1983). We agree with the trial court that the defendant relished this murder. Medina's girlfriend testified that he was "laughing out loud" shortly after the incident and joked about driving over speed bumps. Defendant also made motions with his hands "like, va-room, bump, bump." When Calderon asked what he meant, he told her to watch the news. Defendant looked forward to the publicity his crime would generate and clearly relished it.

¶ 36 The trial court also found that the defendant inflicted gratuitous violence on the victim by running over him more than once. In *State v. Richmond*, 180 Ariz. 573, 886 P.2d 1329 (1994) (*Richmond III* ) we did not find gratuitous violence when the defendant ran over the victim twice with his car. In that case, however, there was no showing that the defendant knew or should have known the victim was dead after the first pass of the car. *Id.* at 579, 886 P.2d at 1335; *see State v. Richmond*, 136 Ariz. 312, 323, 666 P.2d 57, 68 (1983) (Cameron, J., concurring) (*Richmond II* ).

¶ 37 In this case, the medical examiner testified that the victim had been run over twice by a car and died after the first pass. Medina told his girlfriend that he had run over the victim three times. He also told her that Mr. Hodge's head turned a different way with each impact. In addition, Mr. Giles testified that the victim was "red-headed" after the first pass of the car, indicating that he was covered with blood. We believe there was sufficient evidence here to support the trial court's finding of gratuitous violence.

█ ¶ 38 Mutilation requires some indication that the defendant had a "separate purpose to mutilate the corpse." *Richmond III*, 180 Ariz. at 580, 886 P.2d at 1336 (quoting *Richmond II*, 136 Ariz. at 323, 666 P.2d at 68 (Cameron, J., concurring)). There must be evidence that "defendant committed distinct acts, apart from the killing itself," with that "separate purpose" in mind. *Id.* The trial judge in this case found that Medina mutilated his victim by running over him,

the same conduct that caused the death of Mr. Hodge. We are unable, however, to find evidence beyond a reasonable doubt of a separate purpose to mutilate the body.

¶ 39 We agree with the trial court that the killing was senseless because it served no rational purpose. *See State v. Johnson*, 147 Ariz. 395, 401, 710 P.2d 1050, 1056 (1985); *State v. Jimenez*, 165 Ariz. 444, 455, 799 P.2d 785, 796 (1990). The victim here posed no threat to Medina, and there was no apparent motive for the murder.

¶ 40 We also agree that the victim in this case was helpless, having been "disabled and unable to resist the murder." *State v. Lopez*, 175 Ariz. 407, 412, 857 P.2d 1261, 1266 (1993). According to evidence presented at trial, Mr. Hodge was intoxicated when he was rendered unconscious and killed. He realistically could not defend himself nor resist his attackers. As stated earlier, the defendant was much younger and stronger than the victim.

¶ 41 We find that the elements of relishing, gratuitous violence, senselessness and helplessness are present in this case. These are sufficient to support a finding that this killing was especially heinous or depraved. The (F)(6) aggravator has been proven beyond a reasonable doubt. Gang Membership as Mitigation

█ ¶ 42 The state's psychological expert, Dr. Bayless, testified that this crime resulted from the defendant's "gang-related thought process and the morality that comes from that." Dr. Tatro, the defendant's expert, stated that Medina was "dependent on his fellow gang members." Defendant argues that we must remand for a new sentencing because the trial court failed to acknowledge his gang membership as a mitigating factor.

█ ¶ 43 At sentencing, however, the defense never asked the court to consider gang membership in mitigation. "The burden of proving mitigation is on the defendant, A.R.S. § 13–703(C), and the duty to call such evidence to the court's attention also is on the defendant." *Lopez*, 175 Ariz. at 415–16, 857 P.2d at 1269–70. Because facts tending

to show mitigation are peculiarly within the defendant's knowledge, it is not unconstitutional to require the defense to establish mitigating circumstances by a preponderance of the evidence. *State v. Vickers,* 159 Ariz. 532, 544, 768 P.2d 1177, 1189 (1989); *State v. Stokley,* 182 Ariz. 505, 516, 898 P.2d 454, 465 (1995). In any event, although we have held that gang membership *can* be a mitigating factor in some circumstances, a sentencing court is not bound to reach such a conclusion. *State v. Ramirez,* 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994).

¶ 44  This trial judge considered everything offered in mitigation, expressly listing and discussing each factor in his special verdict. Although he did not specifically address gang membership, he referred to it in discussing the defendant's personality disorder.

> The defendant has proven by a preponderance of the evidence that he has a personality disorder characterized by antisocial conduct. However the defendant's antisocial conduct is largely a consequence of his attempt to find acceptance by his fellow street gang members. Knowing that these acts, which hurt others, are wrong and are at variance with the good values he was taught at home by his parents, the defendant turns to the use of drugs, alcohol and inhalants, which, in turn, releases his tendencies toward violent conduct.
>
> As noted by Dr. Bayless, the defendant voluntarily chooses the path of least resistance by emulating the conduct of his antisocial peers, by becoming intoxicated regularly, and by shutting out the values he learned as a child.
>
> The Court finds that the defendant's personality disorder is not a mitigating circumstance.

The trial court ultimately determined that Medina's gang membership was a voluntary choice. In our independent review, we agree that this is not a mitigating circumstance.

**Inadequate Presentence Investigation**

■ ¶ 45  Defendant claims that he was penalized for his lack of cooperation in the presentence investigation. He contends that the probation officer failed to investigate his background, violating Ariz. R.Crim. P. 26.4 as well as state and federal due process guarantees. To impose the death penalty without a thorough investigation, he argues, would be cruel and unusual punishment. He asks us to remand for this purpose.

¶ 46  Although the defendant describes the probation officer's report as two pages long, its actual length was six pages in addition to an attached presentence report from a then-recent prior conviction. The probation officer noted that the document was prepared without the defendant's comments because of his unwillingness to cooperate.

¶ 47  Rule 26.4 states that a trial judge "shall require a pre-sentence report in all cases in which it has discretion over the penalty to be imposed." Ariz. R.Crim. P. 26.4(a). We believe that the probation officer here conducted an adequate investigation of Medina's background. Moreover, the defendant had an opportunity to submit any relevant mitigation. He does not identify what information was lacking as a result of the alleged failure to investigate. In *State v. Cornell,* we addressed the significance of a defendant's refusal to cooperate with a presentence investigation:

> A defendant has a constitutional right not to speak with a probation officer for sentencing purposes. Defendant explicitly invoked that right and never retracted it. . . . Furthermore, under Ariz.R.Crim.P. 26.3(a) and 26.4(a) a defendant may entirely waive the right to have a presentence report prepared. What occurred here was less drastic than that because the probation officer prepared a report with the material available. In addition, the judge already knew a great deal about Defendant's background from trial testimony. This is an appropriate source for sentencing information. Moreover, Defendant's attorney argued on his behalf at the sentencing hearing, giving the judge further perspective favorable to Defendant. Finally, there is no indication that Defendant would have said anything to the probation officer that the court did not already know.

179 Ariz. 314, 333, 878 P.2d 1352, 1371 (1994) (citations omitted). Because we find the in-

vestigation and report sufficient in this case, there is no error.

### Lack of Sentence Recommendation

¶ 48 Defendant argues that in a capital case "[s]ound policy reasons" require the presentence report to contain a specific recommendation. He suggests that if probation officers are obligated to do this, they will more likely conduct thorough investigations. We disagree. The Arizona Rules of Criminal Procedure do not mandate that a presentence report contain a recommendation by the probation officer, *State v. Pitts*, 26 Ariz. App. 390, 393, 548 P.2d 1202, 1205 (1976), and we see no need to impose such a requirement here.

### INDEPENDENT REWEIGHING

¶ 49 In all capital cases we must independently review and reweigh the aggravating and mitigating circumstances to determine whether the sentence is appropriate. A.R.S. § 13–703.01. The trial court found five statutory aggravators: A.R.S. §§ 13–703(F)(2), previous conviction of a serious offense; (F)(5), pecuniary gain motive for the killing; (F)(6), murder committed in an especially heinous, cruel, or depraved manner; (F)(7), offense committed while on authorized release; and (F)(9), age of the victim. Upon review, we agree with the trial court's findings except for (F)(5), pecuniary gain, which was not proven beyond a reasonable doubt.

¶ 50 We also agree that the defendant has established two statutory mitigators by a preponderance of the evidence: a significantly impaired capacity to conform his conduct to the law's requirements, and his youthful age. A.R.S. §§ 13–703(G)(1), (G)(5). Medina was under the influence of alcohol, marijuana and paint fumes at the time of the murder. Both Doctors Tatro and Bayless testified that these substances could have significantly impaired defendant's ability to conform his conduct to the law. In addition, he was only 18 years of age.

¶ 51 The defense presented nonstatutory mitigating evidence of remorse, capacity to learn self-control, personality disorders, sentencing disparities, and resentment of par-

ents. We briefly summarize the trial court's findings on these issues.

### Remorse

¶ 52 Remorse may be considered in mitigation. *State v. Murray*, 184 Ariz. 9, 45, 906 P.2d 542, 578 (1995). Although Medina expressed regret to his girlfriend, he also boasted that he would never be held accountable because all incriminating evidence had been destroyed. He told Dr. Tatro that he regretted his conduct primarily because of the predicament in which it placed him. In addition, the state's expert testified that the defendant blamed the other participants and expressed no remorse. The trial court correctly found that Medina failed to establish this factor.

### Capacity to Learn Self–Control

¶ 53 Medina contends that he has the capacity to improve his behavior if given the time to mature. The court relied on the testimony of Dr. Bayless and Dr. Tatro in determining that this mitigator was not established. Dr. Bayless concluded that the defendant posed a danger to others and was likely to commit violent crimes in or out of custody. He said treatment would be very difficult and the prognosis poor.

57 54 Dr. Tatro testified that the defendant had strong emotional ties only to his family and a small group of friends, and was therefore a danger to society. The doctor believed that, with counseling, the defendant might enlarge the group of people to whom he posed no danger. Nevertheless, we conclude that Medina failed to prove that he has the capacity to learn self-control. *See, e.g., State v. Stokley*, 182 Ariz. at 524, 898 P.2d at 473; *State v. Jones*, 185 Ariz. 471, 491, 917 P.2d 200, 220 (1996).

### Personality Disorder

¶ 55 Dr. Bayless diagnosed the defendant as having an anti-social personality disorder based upon his history as a juvenile offender which demonstrated a pattern of aggressiveness, violence, and callous disregard for the rights, property, and safety of others. The expert testified that although the defendant was aware of societal norms,

he consciously chose violent and aggressive behavior to compensate for feelings of inadequacy, enjoyed acting in this manner, and used drugs to avoid responsibility. Similarly, Dr. Tatro testified that the defendant has a personality disorder with dependent, anti-social, and compulsive traits.

¶ 56 The trial judge found that the defendant's conduct was largely the result of his voluntary choice to emulate his peers. He knew that his acts were wrong and hurt others, but elected to use alcohol, drugs, and inhalants to ease his conscience. Although the defendant proved by a preponderance of the evidence that he has an anti-social personality disorder, we agree with the trial court that this has little or no mitigating value given the facts here. *See State v. Brewer*, 170 Ariz. 486, 505, 826 P.2d 783, 802 (1992) (personality disorder not mitigating without proof that it controlled defendant's conduct or so impaired his mental capacity as to warrant leniency).

### Sentencing Disparity

¶ 57 Defendant claims that his death sentence is disproportionate to life sentences imposed in other cases. The argument is without merit. This court has discontinued proportionality reviews in death penalty cases. *State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992).

### Resentment of Parents

¶ 58 Defendant loves and respects his parents, but has some buried anger at his father for severe punishment received as a boy. He also bears a grudge against his mother for forcing him to do too much for himself as a child. The trial court found, however, that the defendant's overall perception of his childhood was positive. Thus, his family history was held to be only marginally mitigating. We concur. *See State v. Hurles*, 185 Ariz. 199, 207, 914 P.2d 1291, 1299 (1996) (difficult family background does not have substantial mitigating weight without a showing that it significantly impacted the defendant's ability to perceive, to comprehend, or to control his actions).

## DISPOSITION

¶ 59 Following our independent review, we agree with the trial judge that the mitigating circumstances are not sufficiently substantial to warrant leniency. Defendant's convictions and sentences are affirmed.

CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, SARAH GRANT, Judge, concur.

Justice Ruth V. McGregor did not participate in the determination of this matter. Pursuant to Ariz. Const. art. VI, § 3, the Honorable Sarah Grant, Judge of the Arizona Court of Appeals, Division One, was designated to sit in her stead.

MARTONE, Justice, concurring in part, dissenting in part.

¶ 60 I join the court in affirming this conviction and sentence. I dissent only from the court's holding that this is not a case of pecuniary gain.

¶ 61 To support a finding under (F)(5), pecuniary gain must be at least one of the motives for the murder. *State v. Spencer*, 176 Ariz. 36, 43, 859 P.2d 146, 153 (1993). The majority believes that this case is like *State v. Rienhardt*, 190 Ariz. 579, 951 P.2d 454 (1997), rather than *State v. LaGrand*, 153 Ariz. 21, 734 P.2d 563 (1987). The opposite is true.

¶ 62 In *LaGrand*, we said "[w]hen the defendant comes to rob, the defendant expects pecuniary gain and this desire infects all other conduct of the defendant." *LaGrand*, 153 Ariz. at 35, 734 P.2d at 577. LaGrand murdered an employee in the course of an attempted bank robbery. The victim could not open the safe so LaGrand killed him. The court said that the defendant does not have to "intend beforehand to kill as well as to rob to satisfy the statute." *Id.* at 36, 734 P.2d at 578. *See State v. Landrigan*, 176 Ariz. 1, 6, 859 P.2d 111, 116 (1993) (adopting the *LaGrand* pecuniary gain analysis to hold Landrigan's expectation of pecuniary gain infected all other conduct). *See also, State v. Greene*, 192 Ariz. 431, 439, ¶ 32, 967 P.2d 106, 114, ¶ 32 (1998).

¶ 63 Conversely, in *Rienhardt* there was never an expectation of pecuniary gain. Rienhardt "came to buy drugs, not to steal." *Rienhardt,* 190 Ariz. at 591, 951 P.2d at 466.

¶ 64 The evidence here is like the evidence in *LaGrand,* not the evidence in *Rienhardt.* Medina came to rob. The day after the killing he told his girlfriend that he had intended to steal Hodge's car and its radio. As the court notes, the knobs had been pulled off and Medina was convicted of robbery.

¶ 65 In *Rienhardt,* we said that *LaGrand* did not apply because Rienhardt did not "come to rob." *Rienhardt,* 190 Ariz. at 591, 951 P.2d at 466. In contrast, Medina did come to rob. That should be the end of this case. The "removed in time and place" language from *Rienhardt* were words of description, not the basis for the court's decision.

¶ 66 But even if the court now chooses to attach more significance to that language than it deserves, this is not a case in which the murder was removed in time and place from the robbery. In contrast to Rienhardt, who killed out on the desert away from the apartment, the robbery and the murder here occurred where Hodge had parked and slept in his car. And, in contrast to Rienhardt, who killed his victim hours after the drug deal, Medina tried to hot wire the car at about the same time as the murder.

¶ 67 Finally, the court doubts the existence of pecuniary gain because, having been incapacitated, Hodge could not prevent the theft. *Ante,* at ¶ 30. But this sort of reasoning is not grounded in any of our (F)(5) jurisprudence. Pecuniary gain does not have to be the exclusive motive for a killing, but only *a* motive for the killing. And we have said that when the defendant comes to rob, the defendant expects pecuniary gain and that "desire infects all other conduct." *LaGrand,* 153 Ariz. at 35, 734 P.2d at 577.

¶ 68 Today's decision revises our pecuniary gain analysis on facts that do not support the new analysis. As a result, this already murky area is now likely to be more so.