NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLIE RUSSELL MARTIN, *Appellant.*

Nos. 1 CA-CR 17-0125 and 1 CA-CR 17-0126
(Consolidated)
FILED 9-25-2018

Appeal from the Superior Court in Maricopa County
Nos. CR2014-105544-001 and CR2016-112365-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

Charlie Russell Martin, Florence
*Appellant*

---

**MEMORANDUM DECISION**

---

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge James B. Morse Jr. joined.

---

**S W A N N**, Judge:

¶1 This is an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), from Charlie Russell Martin's convictions and sentences for two counts of aggravated driving under the influence ("DUI"), and the revocation of probation and imposition of sentence for an earlier misconduct involving weapons offense. We have considered the issues raised by Martin's *pro per* supplemental brief, and we have searched the record for fundamental error.[1] *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. 738; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 Martin's first trial resulted in a hung jury. The state presented the following evidence at retrial.

¶3 In the early evening on December 5, 2015, the driver of a minivan noticed a Mustang tailgating her. She saw in her rearview mirror that the Mustang's driver was male. Soon after she stopped at a red light, the Mustang impacted the minivan and pushed it forward into another vehicle. After checking on her backseat passengers, the minivan's driver turned around to look at the Mustang. She saw the Mustang's driver, its sole occupant, exit his car and leave. A witness also saw the Mustang's driver hit the minivan, exit the vehicle, and walk away.

¶4 Police were dispatched to the scene. An officer located Martin, who matched the dispatcher's description of the Mustang's driver, approximately 100 yards west of the crash site. Martin did not immediately respond to the officer's order to stop. The officer detained Martin and

---

[1] We deny Martin's Petition for Permission to File Additional Brief or to Amend Supplemental Brief.

We also deny his Request for Oral Argument & Request for Status of Case.

observed that he was unsteady and unable to stand on his own. The officer also noticed that Martin's speech was slurred and that he emanated a "strong odor" of alcohol.

**¶5**         Martin denied any involvement in the collision, and he refused to consent to a blood draw. An officer drew his blood within two hours of the accident pursuant to a search warrant. A forensic scientist determined that Martin's blood alcohol concentration was .256%. At the time of the collision, Martin was subject to an order requiring that he install a certified interlock device on any vehicle he drove.

**¶6**         Martin testified that though he had been drinking alcohol on the day in question, he was not driving the Mustang at the time of the collision. According to Martin, the Mustang was his sister's and his female friend was driving it at the time of the collision. Martin testified that he was unable to exit the vehicle from the passenger's side after the crash, and had maneuvered "over the console" to exit from the driver's side after seeing his friend's door slam shut.

**¶7**         The jury found Martin guilty of two counts of aggravated DUI. Martin waived his rights to hearings on aggravating circumstances and prior felony convictions. He admitted that he was on felony probation for misconduct involving weapons at the time of the offenses, and he admitted to multiple prior felony convictions.

**¶8**         The court revoked Martin's probation for misconduct involving weapons and imposed a 2.5-year prison term for that class-four-felony offense. The court sentenced him to 11-year prison terms for the DUI offenses, to be served concurrent with each other and consecutive to the 2.5-year term. Martin appeals.

**DISCUSSION**

I.     MARTIN'S ARGUMENTS DO NOT IDENTIFY FUNDAMENTAL ERROR.

**¶9**         Martin argues in his supplemental brief that we should reverse his convictions based on witness perjury, a *Miranda* violation, judicial bias and jury coercion, and an improper *Anders* brief. We discern no fundamental error with respect to those issues.

        A.     No Evidence Supports Martin's Claim of Perjury.

**¶10**         Martin first contends that two witnesses committed perjury.

¶11      The knowing use of perjured testimony raises to a denial of due process if a reasonable likelihood exists that the false testimony could have affected the jury's judgment. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). The defendant must show that (1) the statement was actually false, (2) the statement was material, and (3) the prosecutor was aware of the statement's falsity. *Id.* Martin has proffered no evidence showing perjury, and our review of the record reveals none. Martin identifies inconsistencies in witness testimonies. But mere inconsistency in testimony does not establish perjury. *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997).

> B.      The Admission of Martin's Statements Given in the Absence of *Miranda* Warnings Constituted Harmless Error.

¶12      Martin next contends that police did not give him a proper warning under *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

¶13      A person is entitled to *Miranda* warnings before being subjected to custodial interrogation. *Id.* at 444. Custody means that a reasonable person would feel deprived of his freedom in a significant way. *State v. Perea*, 142 Ariz. 352, 354 (1984). Factors indicative of custody include "(1) whether the objective indicia of arrest are present, (2) the site of the interrogation, (3) the length and form of the investigation, and (4) whether the investigation had focused on the accused." *State v. Pettit*, 194 Ariz. 192, 195, ¶ 13 (App. 1998) (citation omitted). Interrogation means express questioning and any police words or actions that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

¶14      Voluntary statements obtained without the benefit of *Miranda* warnings, though unlawful, are subject to the harmless error rule. *State v. Montes*, 136 Ariz. 491, 497 (1983). A constitutional error is harmless if "the appellate court can say beyond a reasonable doubt that the jury would have found the defendant guilty without the evidence." *Id.*

¶15      Here, the state introduced no testimony or other evidence showing that Martin was provided *Miranda* warnings. Body-camera footage admitted at trial shows Martin sitting near the site of the accident, in handcuffs, surrounded by several officers. In these circumstances, Martin was in custody. *See State v. Schinzel*, 202 Ariz. 375, 380, ¶ 20 (App. 2002) (finding defendant clearly "in custody" for purposes of *Miranda* when he was under arrest, handcuffed, and surrounded by officers). The footage further reveals that an officer repeatedly accused Martin of having left the

scene of an accident he was involved in, and asked him about his role in the collision. That constituted interrogation. Martin should have been given *Miranda* warnings. But because he responded to the officer's questions by categorically denying involvement, his statements in no way constituted a confession or suggested culpability. We therefore conclude that the admission of his statements constituted harmless error.

> C.  No Evidence Supports Martin's Claims of Judicial Bias and Jury Coercion.

**¶16**    Martin next contends that the superior court was biased, and coerced the jury's verdicts in several ways.

**¶17**    "[A] trial judge is presumed to be free of bias and prejudice." *State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999) (citation omitted). To rebut that presumption, a party must demonstrate bias or prejudice by a preponderance of the evidence. *Id.* The test for coercion is "whether the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors." *State v. McCutcheon*, 150 Ariz. 317, 320 (1986). Whether conduct amounts to coercion is particularly dependent upon the facts of each case. *State v. Roberts*, 131 Ariz. 513, 515 (1982). We discern no judicial bias or coercion under any of Martin's theories.

> 1.  The Admission of Testimony Obliquely Referencing the First Trial Did Not Evidence Bias or Constitute Coercion.

**¶18**    Martin first contends that the court demonstrated bias and coerced the jury by allowing testimony concerning retrial.

**¶19**    An officer testified, in response to the prosecutor's question of whether he had "talk[ed] to the State before today," that he had "been on the stand before for this." The officer did not elaborate. But even assuming that the jury interpreted his testimony as a statement that the proceedings were a retrial, awareness that the case is a retrial does not automatically render a jury unable to perform its duties with impartiality. *See State ex rel. Montgomery v. Rogers*, 237 Ariz. 419, 422, ¶ 13 (App. 2015) (recognizing that jury instructions describing result of previous judicial proceedings have been upheld when they merely inform the jury of an uncontroverted fact). Nothing in the record suggests that the court acted with bias by failing to strike the testimony, or that the jury was improperly influenced by the fact of the prior trial.

>2.    The Court's Remarks Concerning Martin's Response to a Jury Question Did Not Evidence Bias or Constitute Coercion.

¶20    Martin next contends that the court made "inappropriate comments making [him] look like a lier [sic] in open court" when discussing his response to a jury question.

¶21    The jury asked Martin to provide a description of the friend he claimed was driving the Mustang. Martin described her as "thin" with "short, reddish hair." When defense counsel asked him to "give a little more description," the judge interjected: "[T]hat [description] does fit me right now." And when Martin stated that the friend was "probably a little bit bigger than Your Honor" and clarified that by that he meant "[t]aller," the judge stated: "Flattery gets you everywhere, sir."

¶22    The judge's offhand comments did not suggest that Martin was a liar. The judge's first remark merely noted, as Martin's own counsel had already suggested, that Martin's initial description of his friend was general in nature. And the judge's second remark was nothing more than a passing comment on the nuanced social meaning of the word "bigger." Nothing in the judge's comments suggested bias or jury coercion.

>3.    The Court Permitted Counsel to Complete Closing Argument and Gave the Jury Time to Deliberate.

¶23    Martin next contends that the court demonstrated bias and coerced the jury by "cut[ting] off closing argument" and "rushing the jury to make a verdict."

¶24    The record does not support Martin's contentions. Counsel had the opportunity to present a lengthy closing argument. And when the court asked counsel whether he was close to completing his closing argument and counsel responded that he had 30 seconds left, the court allowed him to continue. The court also expressly assured the jury that its deliberation process was not subject to time or scheduling limitations. At the close of evidence, the court stated: "All of you will get the chance to deliberate. There is no rush. You can take your time. . . . You get to make your schedule, so just let us know. . . . [T]here's no rush at all."

       4.      The Court Correctly Excluded an Alternate Juror From Deliberations.

**¶25** Martin finally contends that the court demonstrated bias and coerced the jury by selecting as an alternate juror "the only [one] taking notes through the whole trial."

**¶26** The record reveals that the clerk randomly selected the alternate jurors by lot in accordance with Ariz. R. Crim. P. 18.5(h)(2). The record contains no suggestion of impropriety in the selection process.

      D.     The *Anders* Brief is Proper.

**¶27** Martin finally contends that he is entitled to reversal of his convictions because appellate counsel should not have filed an *Anders* brief. He contends that counsel "did not search all the facts."

**¶28** Counsel asserts that he searched the record and found no arguable non-frivolous question of law. And in view of our own conclusions after independently reviewing the record, see *infra*, we find no merit to Martin's accusations that an *Anders* brief was improper.

II.     OUR INDEPENDENT REVIEW OF THE RECORD REVEALS NO FUNDAMENTAL ERROR.

**¶29** Our independent review of the record reveals no error, fundamental or otherwise. Martin was present and represented at all critical stages. The jury was properly comprised and instructed, and there is no evidence of juror misconduct.

**¶30** Martin was properly charged with two counts of aggravated DUI under A.R.S. §§ 28-1381(A)(1), (2) (DUI), and -1383(A)(4) (aggravator). *See State v. Nereim*, 234 Ariz. 105, 112 (App. 2014) (principles of double jeopardy not violated by convictions on multiple forms of DUI under A.R.S. § 28-1381(A)). The state presented properly admissible evidence at trial sufficient to support Martin's convictions.

**¶31** On count one, the state charged aggravated DUI under A.R.S. §§ 28-1381(A)(1) and -1383(A)(4). The state was required to prove that Martin either drove or was in actual physical control of a vehicle while under the influence of intoxicating liquor causing impairment to the slightest degree at a time he had been ordered to equip any vehicle he operated with a certified ignition interlock device. The state presented evidence that at a time when Martin was under order to equip any vehicle

he operated with a certified ignition interlock device, he drove the Mustang, was involved in a collision, and was soon thereafter observed to be impaired by reason of alcohol—he was unsteady and slurring his words, he smelled of alcohol, and a blood test confirmed the presence of alcohol in his body.

¶32          On count two, the state charged aggravated DUI under A.R.S. §§ 28-1381(A)(2) and -1383(A)(4).  The state was required to prove that at a time Martin had been ordered to equip any vehicle he operated with a certified ignition interlock device, he either drove or was in actual physical control of a vehicle and within two hours of doing so had a blood alcohol concentration of 0.08 or more that was attributable to alcohol consumed either before or while driving or being in actual physical control of the vehicle.  The state presented evidence that at a time when Martin was under order to equip any vehicle he operated with a certified ignition interlock device, Martin consumed alcohol, drove the Mustang, and within two hours thereafter had a blood alcohol concentration well above 0.08.

¶33          The court imposed proper sentences for the DUI convictions. *See* A.R.S. § 28-1383(A)(4) & (O); A.R.S. § 13-105(22)(a)(iv), (c), & (d); A.R.S. § 13-703(C) & (J); A.R.S. § 13-701(D)(11).  The court also properly revoked Martin's probation and imposed a lawful sentence for the underlying offense.  *See* Ariz. R. Crim. P. 27.8(e); A.R.S. §§ 13-3102(M), -702(D).  The court correctly calculated Martin's presentence incarceration.  To the extent that Martin's presentence incarceration was improperly double-credited on consecutive sentences, any such error inured to his benefit and the state has not cross-appealed.  *See State v. Dawson*, 164 Ariz. 278, 281–82 (1990).

## CONCLUSION

**¶34**        We affirm Martin's convictions, the revocation of his probation, and his sentences.  Defense counsel's obligations pertaining to this appeal have come to an end.  *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).  Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Martin of the status of this appeal and his future options.  *Id.*  Martin has 30 days from the date of this decision to file a petition for review *in propria persona*.  *See* Ariz. R. Crim. P. 31.21(b)(2)(A).  Upon the court's own motion, Martin has 30 days from the date of this decision in which to file a motion for reconsideration.  *See* Ariz. R. Crim. P. 31.20(c).



AMY M. WOOD • Clerk of the Court
FILED:  AA