NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JENIFER ALICIA MCGUIRE-LALLY, *Petitioner/Appellee*,

*v.*

NOEL THOMAS LALLY, *Respondent/Appellant*.

No. 1 CA-CV 20-0486 FC
FILED 7-1-2021

Appeal from the Superior Court in Maricopa County
No. FC2015-009284
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellee*

Noel T. Lally, Chandler
*Respondent/Appellant*

------------------------

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

------------------------

**F U R U Y A**, Judge:

¶1            Noel T. Lally ("Father") appeals from a post-decree order modifying legal decision-making authority, parenting time, and the denial of his motions for contempt. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Father and Jenifer McGuire-Lally ("Mother") married in 2006 and divorced in 2017. The dissolution decree ordered joint legal decision-making and equal parenting time of their three daughters.

¶3            In January 2020, Mother petitioned for modification, seeking sole legal decision-making and restrictions on Father's parenting time. Mother asserted Father emotionally abused the girls. The older two girls, then 14 and 12, refused to return to Father's care.

¶4            At a temporary orders hearing in February 2020, the superior court found that the equal parenting schedule "endanger[ed] the child[ren]'s physical, mental, moral or emotional health" and limited Father's parenting time to court-ordered therapeutic intervention ("TI") sessions with his daughters. After the court denied Father's motion for reconsideration, Father did not cooperate with or pay his share of the expense of the TI, and, therefore, he did not receive parenting time.

¶5            Meanwhile, Father had moved for sanctions including contempt, alleging Mother violated the terms of the decree by not returning his personal property, not reimbursing him for credit card payments, not paying her share of medical expenses, and failing to remove his name from her Sallie Mae loan. He also sought sanctions against Mother for seeking to restrict his parenting time primarily to increase her child support, for failing to communicate the girls' medical information, and for interfering with his parenting time on January 20, 2020.

**¶6** The superior court set a combined hearing for late May 2020 on Mother's petition to modify and on Father's pending motions for sanctions, including contempt. At the hearing, both self-represented parties testified, and Father introduced more than two dozen exhibits.

**¶7** In seeking to rebut Mother's claim that he emotionally abused the girls, Father explained that he holds the children accountable for their behavior. He characterized himself as the more-strict parent and asserted:

> I have a right to parent my children as I see fit as long as I don't violate any laws . . . . [T]here have never been any police charges against me in regards [sic] to physically or emotionally abusing my children. So I'm troubled why this Court removed the children and ordered expensive remedies without any criminal charges or without [Department of Child Safety ("DCS")] involvement.

Father contested the significance of the alleged-abuse events. He challenged Mother's failure to offer a professional's diagnosis supporting her assertion that he emotionally abused the girls.

**¶8** Mother testified that a few days before she filed her January 2020 petition, the girls came to her in an emotional state and seemed frightened by the explosive situation with their Father and his recent punishments. The girls' behavior had recently changed, and they were receiving professional help. Mother stated the three girls, individually or collectively, exhibited various deleterious effects she attributed as consequences of Father's conduct, including sleep issues, Post-Traumatic Stress Disorder, fear of Father, anxiety, anger, helplessness, and other serious issues. She further provided examples of how Father created discord amongst the siblings.

**¶9** The court also heard testimony from a court-appointed advisor ("CAA") and admitted her report in evidence. The CAA's investigation included interviewing the children and parents, as well as reviewing medical, police, and school records. The CAA reported accounts that Father became volatile and imposed additional chores when he thought the children were being lazy or not living up to their potential. The reports also included that the health of at least two of the girls improved once they no longer had to see Father, and the girls were adamant they did not want to go back. The third daughter, however, blamed her siblings for causing Father's anger and resented that she could not see Father.

¶10     The court found a continuing and substantial change in circumstances and found it was in the girls' best interests that Mother have sole legal decision-making. The court ordered a seven-phase reunification plan with Father, starting with therapeutic visits and gradually moving towards a return to equal parenting time as the therapeutic interventionist deemed appropriate.

¶11     The court denied Father's motions for sanctions, including contempt, other than for Mother's failure to communicate regarding medical information and, for that, it imposed a sanction of up to $125. The court denied Father's motion for reconsideration. Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and –2101(A)(2). We decline to accept special action jurisdiction over the contempt order.

## DISCUSSION

¶12     Father challenges the order modifying legal decision-making and setting conditions on his parenting time. He also seeks to appeal the rulings on his motions for sanctions.

## I.     The Parenting Time and Legal Decision-Making Order

¶13     To modify parenting time or legal decision-making, the superior court must first find "a change in circumstances materially affecting the welfare of the child[ren]." *Black v. Black*, 114 Ariz. 282, 283 (1977). If the court finds a change in circumstances, it then determines whether modification is in the children's best interests. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013).

¶14     The court independently weighs the evidence and exercises its discretion in determining what is in the children's best interests. *Nold v. Nold*, 232 Ariz. 270, 273–74, ¶ 14 (App. 2013). We will not disturb a court's decision absent an abuse of discretion. *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 3 (App. 2002); *see also DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019) (defining an abuse of discretion).

¶15     Here, the court found that a material change in the children's circumstances was negatively affecting them. The court made written findings on all the statutory best interest factors. *See* A.R.S. § 25-403(B). Those findings addressed the status of the parent-child relationships, the children's preferences, and the mental and physical health of all individuals involved. *See* A.R.S. § 25-403(A)(1), (3)–(5). The record reflects the court

considered the conflicting evidence, including the demeanor of the parties, their testimony, and the testimony of the CAA.

**¶16**        The CAA's testimony and report, as well as Mother's testimony, support the conclusion that court-ordered modifications were warranted based on the needs and welfare of the children, individually and collectively. Father complains that Mother offered no medical opinion that he caused the children emotional harm. But Mother was not required to offer a medical diagnosis; her own testimony and that of the CAA were sufficient. *See Mahan v. First Nat. Bank of Ariz.*,139 Ariz. 138, 141 (App. 1984) (stating that evidence need only be probative and admissible). We defer to the court's assessment of witness credibility and weight given conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347–48, ¶ 13 (App. 1998).

**¶17**        Citing Titles 8 and 13 of the Arizona Revised Statutes, Father asserts the court made an error of law when it "decided to remove the children . . . without him ever being charged with a crime or involvement [by] DCS." *See* A.R.S. § 13-3620 (criminal code); A.R.S. § 8-201 (child safety). But the court can modify legal decision-making and set conditions on parenting time without criminal charges being filed or the involvement of DCS. *See* A.R.S. § 25-403.03 (discussing the presumptions and findings required to support the court's finding of domestic violence). Rather, the focus "at all levels, at all times and in all forums, [is] the welfare and best interest of the child." *Funk v. Ossman*, 150 Ariz. 578, 581 (App. 1986).

**¶18**        Beyond alleging the court abused its discretion in weighing the evidence, Father also raises several other challenges to the court's rulings. He argues the court erred by allowing Mother to testify because she failed to timely disclose the substance of her testimony before trial. The court overruled Father's objection on the basis that Mother is a party and her petition contained the substance of her testimony. We review the admissibility of evidence for an abuse of discretion, *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6 (App. 2000), and Father has shown no such abuse.

**¶19**        Father next argues that because Mother was held in contempt for failing to advise him of medical issues or appointments, she should be precluded from having sole legal decision-making. He cites no legal authority supporting this argument, nor are we aware of any.

**¶20**        Father suggests that the court was biased against him. Judges are presumed to be free of bias and to overcome that presumption requires proof. *Cardoso v. Soldo*, 230 Ariz. 614, 619–20, ¶ 19 (App. 2012). Father needed to "set forth a specific basis for the claim of partiality and prove [it]

by a preponderance of the evidence." *See State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999). He did not do so.

**¶21**     The court's rulings against Father are not proof of bias. The fact that a different judge in an earlier proceeding came to different conclusions on a different record is likewise not proof of bias. A decree or other parenting order represents a snapshot of the children's best interests at that moment. *Backstrand v. Backstrand*, 250 Ariz. 339, 345, ¶ 18 (App. 2020). That snapshot is the baseline to assess if a material change of circumstances occurs in the future and to assist in the determination of the children's best interests. *Id.* In short, Father offers no proof of bias nor does the record reflect any bias.

**¶22**     Father also suggests that the court denied him due process. Due process requires that the court afford a party notice and a meaningful opportunity to be heard. *Backstrand*, 250 Ariz. at 347, ¶ 29. Although Father states: (1) his wife could have testified in support of his case, and (2) he could have introduced fifty additional exhibits, he presented his own case over the course of three hours. Father did not call his wife as a witness during the time allotted to him and does not point to any specific material evidence he was precluded from presenting. The court "may impose reasonable time limits appropriate to the proceedings." *Backstrand*, 250 Ariz. at 347, ¶ 29 (citing Ariz. R. Fam. Law P. 22(a)). Reviewing *de novo* the adequacy of due process afforded Father, we perceive no error. *See Savord v. Morton*, 235 Ariz. 256, 260, ¶ 16 (App. 2014).

**¶23**     The court found that Father refused to participate in several court-ordered services, including the TI sessions, and failed to register for the ProperComm communications app to improve the parties' communication. Father asserts he did not fail to comply, rather he was financially unable to comply. He claims the court ignored more economical alternatives that he suggested. We review this issue for an abuse of discretion. *See In re Marriage of Berger*, 140 Ariz. 156, 167 (App. 1983).

**¶24**     The superior court must set conditions for the exercise of parenting time. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). That authority is based on its statutory duty to determine what is in the children's best interests. *Id.* The court is authorized by statute to seek professional advice and assistance on parenting issues, including therapeutic intervention, if needed. *See* A.R.S. § 25-405(B). The parenting plan is not merely based on a parent's convenience or desires. *See* A.R.S. §§ 25-403.02(C)(3) (requiring a "practical schedule"), (7) (requiring the court to set forth the frequency and method of communication), and -403.02(D)

(permitting the court to determine the factors necessary to promote and protect the children's emotional and physical health).

¶25 The record is devoid of specific supporting evidence that Father could not comply. Father was not indigent. At trial, Father complained generally about the cost but did not offer evidence of the projected expense of court-ordered services or the impact of that expense. Instead, he argued Mother brought the modification to increase her child support and his belief that the orders were unjustified. But the court had the benefit of the parties' current affidavits of financial information at the time it ordered Father to pay monthly child support of $822 and TI expenses. Inherent in the court's determination is the conclusion that Father could afford those services. *See Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11 (App. 1998). Thus, on this record, the court did not commit error by ordering Father to participate and pay a portion of TI services.

## II. The Contempt Rulings

¶26 Father's motions for sanctions, including for contempt, all claimed Mother failed to comply with directives in the dissolution decree, primarily concerning the return of property and other financial matters. After hearing evidence, the court denied those motions, with the lone exception noted earlier. Although Father purports to appeal the court's contempt rulings, contempt rulings are not appealable and may only be challenged by special action. *Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 555, ¶ 8 (App. 2020). Father asks us to accept special action jurisdiction in his reply brief. However, Father did not raise this argument in his opening brief, and we typically do not address issues raised for the first time in a reply brief. *Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007). In any event, we decline to accept special action jurisdiction review here. Accordingly, we do not further consider Father's challenges to the contempt rulings.

## III. Fees and Costs on Appeal

¶27 Both parties request fees and costs on appeal. We award Mother her attorneys' fees pursuant to A.R.S. § 25-324. Under that statute, we must consider the parties' financial resources and the reasonableness of the parents' positions during the proceedings. *Id.* Both parents currently earn a similar amount. Having considered the financial resources and weighed the reasonableness of the parties' positions on appeal, we award Mother her reasonable attorneys' fees, as well as her taxable costs on appeal, contingent upon her compliance with ARCAP 21.

**CONCLUSION**

¶28      For the foregoing reasons, we affirm the superior court's order modifying legal decision-making and parenting time.



AMY M. WOOD • Clerk of the Court
FILED:    AA