IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**MARIANNE N.,**
*Appellant,*

*v.*

**DEPARTMENT OF CHILD SAFETY, O.N., I.T., A.G.,**
*Appellees.*

————————

No. CV-16-0259-PR
Filed September 25, 2017

————————

Appeal from the Superior Court in Coconino County
The Honorable Margaret A. McCullough, Judge
No. JD2009-0008
**AFFIRMED**

Opinion of the Court of Appeals, Division One
240 Ariz. 470 (App. 2016)
**VACATED IN PART**

————————

COUNSEL:

Chad Joshua Winger (argued), Harris & Winger, P.C., Flagstaff; Attorneys
for Marianne N.

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor
General, Nicholas Chapman-Hushek (argued), JoAnn Falgout, Assistant
Attorney Generals, Phoenix, Attorneys for Department of Child Safety

————————

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICE BRUTINEL joined. JUDGE PETER J. ECKERSTROM,[*] joined by JUSTICES BOLICK and GOULD, dissented.

JUSTICE TIMMER, opinion of the Court:

**¶1**        When termination of parental rights proceedings are initiated by motion in a pending dependency action, A.R.S. § 8-863(C) authorizes the juvenile court to find that a parent waived legal rights and admitted the motion's allegations if the parent "does not appear at the hearing." The court may then terminate that parent's relationship with the child. Rule 64(C), Ariz. R.P. Juv. Ct., authorizes the court to proceed in the same manner if a parent fails without good cause to appear at "the initial hearing, pretrial conference, status conference or termination adjudication hearing."

**¶2**        We here hold that applying Rule 64(C) in pretrial proceedings does not conflict with § 8-863(C) in violation of the separation of powers required by the Arizona Constitution, article 3.

## BACKGROUND

**¶3**        The Department of Child Safety ("DCS") took custody of Marianne N.'s three children in February 2015 and placed them in foster care. In June, after a hearing at which Marianne testified, the juvenile court found the children dependent as to her on the ground of neglect. (The court also found the children dependent as to their respective fathers. The fathers' parental rights are not at issue here.) The court found that Marianne had continuing substance abuse issues and had exposed the children to inappropriate caregivers and safety risks. The court ordered DCS to continue providing family reunification services.

**¶4**        Marianne's participation in services was sporadic, and the children remained in foster care. At a permanency hearing held on

---

[*]        Justice John R. Lopez IV recused himself. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Peter J. Eckerstrom, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

November 30, the court changed the case plan to severance and adoption and directed DCS to file a motion to terminate Marianne's parental rights. DCS did so on the grounds of neglect, chronic abuse of dangerous drugs, and the length of time the children had been in an out-of-home placement. *See* A.R.S. § 8-533(B)(2), (3), (8).

¶5        The court held an initial termination hearing on December 18, which Marianne attended. The court scheduled a mediation and pretrial hearing for January 20, 2016, and set the termination adjudication hearing for February 24. The court provided Marianne a written notice ("the Form 3") informing her, in relevant part, as follows:

> You are required to attend all termination hearings. If you cannot attend a court hearing, you must prove to the Court that you had good cause for not attending. If you fail to attend the Initial Termination Hearing, Termination Pre-trial Conference, or Termination Adjudication Hearing without good cause, the Court may determine that you have waived your legal rights, and admitted the allegations in the motion/petition for termination. The hearings may go forward in your absence, and the Court may terminate your parental rights to your child based on the record and evidence presented.

*See* Ariz. R.P. Juv. Ct. 65(D)(3) (requiring court at the initial hearing to notify a parent of the substance of Form 3). The Form 3 also stated that a mediation would take place on January 20, 2016, at 1:00 p.m. followed by a pretrial conference at 1:45 p.m. Marianne signed the form. The court likewise verbally warned Marianne twice that if she failed to attend future proceedings, it could proceed without her and find that she waived her rights and admitted DCS's allegations. Marianne did not respond to the court's warnings. Before concluding the hearing, the court found that Marianne had been "advised of the consequences of failure to attend future hearings."

¶6        Marianne did not appear at the scheduled mediation and pretrial hearing on January 20. Her attorney made "several attempts to contact her" by telephone without success. The court found that Marianne

had notice of the hearing date and time, as shown by the Form 3, and had been warned about the consequences for non-attendance.

¶7        The court found that Marianne failed to appear without good cause and proceeded to conduct a termination hearing pursuant to Rule 64(C), which authorizes the court to proceed to a final termination hearing when a parent fails to appear without good cause at a pretrial conference. The court also found that Marianne had been served with the motion for termination of parental rights. DCS elicited testimony from a caseworker, and Marianne's attorney cross-examined her.

¶8        Thirty minutes after the hearing started, Marianne called the court asking to appear telephonically. She conferred separately with her attorney, who then related Marianne's explanation that the Form 3 listed a different date for the hearing. The court disbelieved Marianne because the Form 3 in the court's file listed the correct hearing date. The court therefore refused to permit Marianne to appear telephonically but indicated it would reconsider the decision if Marianne's copy of the Form 3, which may have been filled out separately from the original, bore an incorrect hearing date. (She never submitted her copy for inspection.

¶9        At the conclusion of the hearing, the court found that DCS had proven all three statutory grounds for termination by clear and convincing evidence and that termination was in the children's best interests. The court therefore terminated Marianne's parental rights. (The court also terminated parental rights of one of the fathers who did not attend the hearing. It confirmed the termination adjudication hearing date for the other two fathers who attended the hearing.).

¶10        Marianne appealed. *Marianne N. v. Dep't of Child Safety*, 240 Ariz. 470 (App. 2016). She argued for the first time that Rule 64(C) conflicts with A.R.S. § 8-863(C), which addresses the consequences for a parent's failure to appear at a hearing, and thus violates separation-of-powers principles. *Id.* at 472–73 ¶ 8. The court of appeals disagreed. It did not address whether the rule and statute conflicted but instead concluded that Rule 64(C) is a procedural rule and therefore was promulgated in a constitutional exercise of this Court's authority. *Id.* at 474 ¶ 14.

¶11        We granted review to decide the constitutionality of Rule 64(C), a recurring issue of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

## I.

### A.

¶12        We here decide only whether Rule 64(C) violates separation-of-powers principles—the sole issue presented by Marianne—a constitutional issue that we review de novo. *See State v. Nordstrom*, 230 Ariz. 110, 115 ¶ 17 (2012).  Before this Court, Marianne has not argued that the juvenile court abused its discretion under Rule 64(C) by proceeding to a termination hearing without her participation. Nor has she argued that applying Rule 64(C) denied her due process or interfered with her liberty interest in parenting her children.

### B.

¶13        Before turning to the merits, we consider DCS's argument that Marianne waived her challenge by failing to raise it to the juvenile court.  Although generally we refuse to address an argument raised for the first time on appeal, that principle is jurisprudential, not jurisdictional. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552 ¶ 33 n.9 (2005). In light of the statewide significance of the issue here, and because the court of appeals decided it, we address the merits of Marianne's challenge. *Cf. id.* (noting that "good reason exists" to decide an issue not raised to the superior court when the issue has statewide importance and the court of appeals addressed it).

## II.

### A.

¶14        The Arizona Constitution divides governmental powers among the legislative, the executive, and the judicial departments, "and no one of such departments shall exercise the powers properly belonging to either of the others."  Ariz. Const. art. 3.  Although this Court has the

exclusive power to govern procedural matters in Arizona courts, Ariz. Const. art. 6, § 5(5), it cannot enlarge or diminish substantive rights created by statute. *Daou v. Harris*, 139 Ariz. 353, 357–58 (1984).

¶15 Parental-termination proceedings are initiated by motion, when dependency proceedings are ongoing, and otherwise by petition. *See* A.R.S. §§ 8-533(A) (petition), -862(D) (motion). Section 8-863, which applies when termination proceedings are initiated by motion in a dependency proceeding, as here, provides:

> **A.** At least ten days before the initial hearing on the termination of parental rights pursuant to this article, the party who is responsible for filing a motion pursuant to § 8-862, subsection D shall serve the motion on all parties as prescribed in rule 5(c) of the Arizona rules of civil procedure . . . .
>
> **B.** The court may terminate the parental rights of a parent if the court finds by clear and convincing evidence one or more of the grounds prescribed in § 8-533.
>
> **C.** If a parent does not appear at the hearing, the court, after determining that the parent has been served as provided in subsection A of this section, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court.

¶16 Rule 64(C) provides notice procedures in termination hearings, whether initiated by motion or petition:

> **C. Notice of Hearing.** A notice of hearing shall accompany the motion or petition for termination of parental rights and shall advise the parent . . . of the location, date and time of the initial termination hearing. In addition to the information required by law, the notice of hearing shall advise the parent

6

> . . . that failure to appear at the initial hearing, pretrial conference, status conference or termination adjudication hearing, without good cause, may result in a finding that the parent . . . has waived legal rights, and is deemed to have admitted the allegations in the motion or petition for termination. The notice shall advise the parent . . . that the hearings may go forward in the absence of the parent . . . and may result in the termination of parental rights based upon the record and evidence presented.

This rule implicitly authorizes the juvenile court to terminate parental rights by default if a parent fails to appear without good cause at any one of four types of court proceedings. *See Adrian E. v. Ariz. Dept. of Econ. Sec.*, 215 Ariz. 96, 100 ¶ 12 (App. 2007) (noting that reading Rule 64(C) as a notice-only provision would render it meaningless in motion-initiated termination actions). Marianne does not contest that Rule 64(C) applies here if this Court had the authority to promulgate it. (It is therefore unnecessary to respond to the dissent's recasting of Rule 64(C) as "an over-inclusive, omnibus notice" that purposefully warns parents about consequences the juvenile court is not authorized to impose. *See infra* ¶¶ 57–59).

¶17            Marianne argues that Rule 64(C) diminished the substantive rights conferred by A.R.S. § 8-863(C) by authorizing the juvenile court to find that she waived legal rights and admitted the motion's allegations by failing to appear at the pretrial conference, rather than the scheduled termination adjudication hearing, and then terminating her rights based on the record and evidence presented. DCS counters that Rule 64(C) does not conflict with § 8-863(C) and, even if it does, the court of appeals correctly found that the rule is procedural and thus properly promulgated by this Court.

¶18            We need not decide whether § 8-863(C) and Rule 64(C) are procedural or substantive because we agree with DCS that they can be harmonized. *See State v. Hansen*, 215 Ariz. 287, 289 ¶ 7 (2007) ("Rules and statutes should be harmonized wherever possible and read in conjunction with each other." (internal quotation marks and citation omitted)).

**B.**

**¶19** We begin by addressing the meaning of § 8-863(C). Marianne asserts that "the hearing" in § 8-863(C) refers solely to a final termination adjudication hearing and therefore grants parents the substantive right to appear and participate in that hearing regardless of any failure to attend prior hearings or proceedings. She argues that Rule 64(C) diminishes that right when applied to pre-termination adjudication hearing proceedings.

**¶20** The identity of "the hearing" in § 8-863(C) is unclear. It most likely refers to the "initial hearing," as that is the only hearing mentioned in the statute. A.R.S. § 8-863(A). And the juvenile court can find a waiver of legal rights based on non-appearance at "the hearing" only if the parent was served with the motion for termination, which sets forth the date and time for the initial hearing, not the termination adjudication hearing. *Id.* §§ 8-862(D)(2), -863(C). But the statute also sets forth the standard for terminating parental rights, making it plausible that "the hearing" means the termination adjudication hearing. *See id*. § 8-863(B).

**¶21** We need not resolve this ambiguity. Even assuming Marianne is correct that "the hearing" in § 8-863(C) refers to the termination adjudication hearing, Rule 64(C) does not diminish any substantive rights arguably conferred by that statute. Nothing in § 8-863(C) restricts "the hearing" to a previously scheduled termination adjudication hearing or requires that notice be given in advance of the hearing. *Cf. Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 2 ¶ 5 (2007) (declaring that statutory text is the best indicator of legislative intent). Other than directing when the motion for termination must be served on a parent, § 8-863 leaves it to this Court to provide the procedural framework for making the termination decision. *Cf. Daou*, 139 Ariz. at 357-58 ("The power to govern procedural matters for all courts, however, is vested exclusively with this court."); *Kenneth T. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 150, 152 ¶ 10 (App. 2006) (approving termination of parental rights by summary judgment, reasoning that "whether the case is resolved by default, a motion to dismiss, motion for summary judgment, or by trial, is a question of procedure.").

**¶22** The procedural framework created by this Court includes Rule 64(C), which authorizes the juvenile court to "go forward" with a termination adjudication hearing at the time scheduled for a pretrial

proceeding if the parent fails to attend without good cause.  Section 8-863(C) does not curtail the juvenile court's authority to convert a scheduled pretrial conference into a termination adjudication hearing, as Marianne was repeatedly warned could occur in the event of her non-attendance.  (Indeed, the statutes governing motion-initiated termination proceedings do not mention pretrial conferences.)  When the juvenile court "go[es] forward" with the adjudication termination hearing in the parent's absence, it can proceed as contemplated by § 8-863(C) by determining that the parent was served with the motion to terminate parental rights.  It may then find that a parent has waived her legal rights by failing to appear at the termination adjudication hearing and then terminate the parent-child relationship based on the record and evidence presented.  A.R.S. § 8-863(C).  The rule and statute work harmoniously.

**¶23**　　　　The legislative history for § 8-863(C) supports our view.  Subsection (C) was added to § 8-863 in 1999 as part of a comprehensive packet of new laws affecting child safety and welfare.  In part, the legislature sought to "resolve[] the problem posed by" *Don L. v. Arizona Department of Economic Security*, 193 Ariz. 556 (App. 1998), "which held that the juvenile court lacked authority to sever parental rights by default in the absence of a court rule or statute granting that authority."  Ariz. State Senate Fact Sheet for S.B. 1109, 44th Leg., 1st Reg. Sess. (Apr. 30, 1999).

**¶24**　　　　The situation in *Don L.* is analogous to the one here and illuminates the legislature's intent.  The child there was adjudicated dependent, and DCS's predecessor eventually petitioned to terminate the father's parental rights.  *Don L.*, 193 Ariz. at 557-58 ¶ 2.  (The law was amended after the events there to permit the termination of parental rights to be initiated by motion in a pending dependency action rather than by petition.  *See* A.R.S. § 8-862(D), Historical and Statutory Notes; 1998 Ariz. Leg. Serv. Ch. 276 (H.B. 2645)).  At the initial termination hearing, as here, the court admonished the father to attend all future hearings and warned that his failure to attend could result in the entry of a default judgment.  *Don L.*, 193 Ariz. At 557-58 ¶ 2.  The father subsequently failed to appear at a status hearing, so the court found he had admitted the petition allegations and conducted a termination adjudication hearing.  *Id*. at 558 ¶¶ 2-3.  After hearing testimony and admitting evidence proving the petition allegations, the court terminated the father's parental rights.  *Id*. ¶ 3.  The court of appeals reversed because nothing "allow[ed] the juvenile court to sever

parental rights by 'default' solely because the parent fails to attend a status hearing." *Id.* ¶ 6.

¶25 The legislature's goal of "resolv[ing] the problem posed by" *Don L.* is only achieved by interpreting § 8-863(C) as permitting the juvenile court to conduct a termination adjudication hearing at a time scheduled for a pretrial conference when a parent fails to appear without good cause. If we viewed the provision as narrowly as Marianne, the problem presented in *Don L.* would remain unresolved.

¶26 Our view is also supported by considering that Marianne's interpretation would result in treating motion-initiated termination proceedings differently from petition-initiated proceedings. We find no basis for doing so.

¶27 When the legislature enacted § 8-863(C), it also enacted provisions requiring the juvenile court in petition-initiated proceedings to conduct an initial hearing, a pretrial conference or status conference, and a termination adjudication hearing. *See* A.R.S. § 8-535(A)-(B), (E); S.B. 1109, 44th Leg., 1st Reg. Sess. (Ariz. 1999). It simultaneously provided that if a parent fails to appear at any of these proceedings, the court may find that the parent waived his or her legal rights and admitted the petition's allegations and then terminate the parent's rights based on the record and evidence presented. *See* A.R.S. §§ 8-535(D), -537(C).

¶28 Under Marianne's view, adopted by the dissent, the court could find that a parent who does not attend a pretrial conference waived legal rights and admitted termination allegations and then terminate that parent's rights after receiving sufficient evidence in petition-initiated proceedings but not in motion-initiated proceedings. But the legislature enacted the motion-initiated termination process in pending dependency cases "so that children can be adopted more readily and at an earlier age." *Mara M. v. Ariz. Dep't of Econ. Sec.*, 201 Ariz. 503, 505-06 ¶ 16 (App. 2002). It is unfathomable that the legislature would intend that the court could accelerate proceedings in petition-initiated proceedings but not in motion-initiated ones. This is particularly true as dependent children have already endured a period of uncertainty before initiation of termination proceedings. Interpreting § 8-863(C) as we do results in parallel

acceleration procedures regardless of how the termination proceedings were initiated.

¶29    The dissent speculates that the legislature singled out petition-initiated proceedings for different treatment because judges know less about the alleged termination grounds there than in motion-initiated proceedings, which have a dependency track record. The theory is that a parent's non-appearance at a pretrial conference in petition-initiated proceedings therefore justifies acceleration to a final termination hearing to avoid the risk of obstructing and delaying a child's permanency. *See infra* ¶¶ 45-47. In short, the less the judge knows about a case the more justified proceeding to a final termination hearing if a parent fails to appear at a pretrial conference. That conjecture is illogical. Whether the case is initiated by petition or motion, when a parent fails without good cause to attend a pretrial conference, proceeding to termination provides a strong incentive for attendance and prevents delay in the resolution of the child's status, a goal—unlike the dissent's speculative rationale—that is supported by the legislative history.

¶30    Marianne argues that by omitting references to a pretrial conference and status conference in § 8-863(C), the legislature evidenced its intent to create different procedures for petition-initiated and motion-initiated termination proceedings. But no reason existed for the legislature to refer to these proceedings in § 8-863(C) because, unlike with petition-initiated proceedings, no pretrial conferences are required in motion-initiated proceedings. (The dependency action preceding motion-initiated proceedings already requires the court to hold a settlement conference or pretrial conference or order mediation.) The legislature only required the court in motion-initiated proceedings to hold an initial hearing and a termination adjudication hearing. A.R.S. § 8-862(D)(2).

¶31    In sum, we agree with the court of appeals' holding but for a different reason. Rule 64(C) does not enlarge or diminish any substantive rights granted by § 8-863(C). The rule and statute work in harmony, and there is no separation-of-powers violation.

**CONCLUSION**

¶32      We vacate ¶¶ 7 – 14 of the court of appeals' opinion and affirm the juvenile court's termination of Marianne's parental rights.

JUDGE ECKERSTROM, joined by JUSTICES BOLICK AND GOULD, dissenting:

¶33      The majority holds today that Marianne N., a mother who appeared at all fourteen hearings in her dependency case, and attempted to appear telephonically at the pretrial conference regarding DCS's motion to terminate her parental rights, was properly "defaulted" under Arizona law. Because I cannot agree that A.R.S. § 8-863(C) can be read to authorize such a result and because Rule 64(C), Ariz. R.P. Juv. Ct., is most plausibly understood as a notice provision designed to facilitate that statute, I respectfully dissent.

¶34      The United States Supreme Court long ago observed that a parent's right to "care, custody, management and companionship of [his or] her minor children" is "far more precious" than any property interest, *May v. Anderson*, 345 U.S. 528, 533, (1953), and has determined that right is fundamental. *Stanley v. Illinois,* 40 U.S. 645, 651 (1972). Accordingly, both the United States Supreme Court and Arizona courts have repeatedly held that the state may not interfere with the relationship between parents and their children without providing due process of law. *Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 571 ¶ 6 (App. 2013) (listing cases).

¶35      As the majority points out, whether application of Rule 64(C) here deprived Marianne of her due process rights or interfered with her liberty interest in parenting her children is not before us. But as explained below, the text of § 8-863(C) strikes a careful balance between these important parental rights and a child's need for permanency. In so doing, it does not authorize the forfeiture of a parent's due process rights for failing to attend a pretrial conference. Nor should we read Rule 64(C) as anything other than what it purports to be—a notice provision designed to facilitate the legislature's default scheme for terminations initiated by both motions and petitions.

¶36		In construing the rule and the statute, we must be cognizant that pretrial conferences in motion-initiated severance proceedings arise near the end of dependency proceedings. *See* A.R.S. §§ 8-841 to 8-847 (pre-termination dependency proceedings), 8-862. And, a parent's failure to attend a pretrial conference risks no delay in the scheduled termination hearing or the child's permanency. *See* A.R.S. §§ 8-862(D)(2), 8-864(2) (court under strict deadline to hold termination hearing). In apparent recognition of this, Arizona statute does not authorize the forfeiture of a parent's due process rights for failure to attend a pretrial conference during the severance proceedings initiated by motion.

¶37		In enacting § 8-863, the legislature established important procedural protections for a parent facing termination arising out of dependency proceedings, including the right to notice of those proceedings and the benefit of an elevated standard of proof as to statutorily specified grounds for termination. The legislature also identified the lone circumstance under which important due process rights may be deemed waived: the parent's failure to appear at the termination hearing. A.R.S. § 8-863(C) (logically referring to the termination proceeding referred to in subsection A and described in subsection B).

¶38		Any statutory provision that establishes consequences for a person's failure to appear for legal proceedings necessarily strikes a balance between competing interests. Here, the statute balances the parent's entitlement to due process against the state's substantial interest in securing permanency for dependent children. *See Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 460 ¶ 24 (App. 2010) (observing strong public policy in favor of securing permanency for children). Indeed, the sequential provisions in § 8-863 demonstrate precisely such a tension. Subsections (A) and (B) of § 8-863 set forth procedural rights benefitting the parent: respectively, the right to receive notice of the motion to terminate and the right to an enhanced burden of proof as to statutorily specified grounds for termination. By contrast, subsection (C) subordinates a parent's procedural entitlements to the child's interest in a permanent home — when the parent's non-appearance at the termination hearing would otherwise delay that permanence.

¶39        Any expansion of the grounds for such a default would alter the balance expressed by the text of § 8-863.  Therefore, to the extent Rule 64(C) is construed as intending to establish additional conditions for forfeiture or default beyond those enacted by our legislature, the rule cannot be harmonized with the statute.  It would strike a different balance between competing interests.

¶40        The majority holds that the statute's language does not expressly preclude default at a pretrial conference and therefore can be harmonized with its reading of Rule 64(C) as providing a supplementary forfeiture provision.  Specifically, it maintains that "nothing in § 8-863(C) restricts 'the hearing' to a previously scheduled termination adjudication hearing . . . ."  But, as the majority acknowledges, the legislature enacted § 8-863(C), establishing procedures for termination by motion, at the same time it enacted § 8-537(C), a parallel provision setting forth procedures for termination by petition.  Unlike § 8-863(C), the latter specifies that a parent's non-appearance at "the pretrial conference, status conference or termination adjudication hearing" can result in forfeiture of substantial procedural rights.  A.R.S. § 8-537(C).

¶41        Thus, when the legislature intended to sanction non-appearance at pretrial conferences with instant acceleration of the termination proceedings, it conveyed that intent expressly.  That it declined to do so in § 8-863(C) — in legislation enacted the same day as part of the same general scheme and as to parallel procedural events — demonstrates that the omission was intentional rather than accidental.  *See City of Flagstaff v. Mangum*, 164 Ariz. 395, 398 (1990) ("Where the legislature uses a term within one statute and excludes it from another, the term usually will not be read into the provision from which it was excluded.").

¶42        Based on its plain language, § 8-863(C) expressly allows default only if the parent fails to attend the severance hearing.  By its very title, "Hearing to terminate parental rights; notice; grounds," the statute as a whole pertains to the termination hearing.  All three subsections define features of a termination hearing:  they describe, respectively, how it is noticed, the evidentiary burdens therefor, and the circumstances under

which a parent can forfeit procedural rights at the hearing.   A.R.S. § 8-863(A)-(C).[1]

**¶43**        Furthermore, the language of subsection (C) cannot be harmonized with the suggestion that its default provisions would apply to non-appearance at multiple types of hearings: the statute sanctions a parent for non-appearance at "the hearing"—a semantically singular event.  Thus, § 8-863(C) cannot be construed as providing such a default for failing to appear at a pretrial conference without adding words to the statute that the legislature chose not to include.  *See Calnimptewa v. Flagstaff Police Dep't*, 200 Ariz. 567, 570 ¶ 13, (App. 2001) ("[W]e are not authorized to supply words that would extend the scope of a statute beyond that intended by the legislature.").

**¶44**        But why would the legislature establish different forfeiture standards for terminations by petition than for terminations by motion? Indeed, as the majority correctly observes, children involved in motion-initiated severance proceedings have already endured a longer period of uncertainty.  Would not permanency be more urgent for them?  Why, then, would the legislature be more tolerant of a parent's failure to appear in motion-initiated proceedings than those initiated by petition?

**¶45**        The answers rest in the procedural differences between these two proceedings.   In termination proceedings arising by motion, the lawyers and parties have already appeared in court, usually numerous times, to address the underlying dependency.  That is precisely what

---

[1]        Arguably, § 8-863(C) can be read to authorize default for a parent's non-appearance at the initial severance hearing.  The phrase "the hearing" in subsection C could refer to either subsection B, which sets the evidentiary burden for the termination hearing, or subsection A, which refers to "the initial hearing on the termination of parental rights."  However, nothing in the text of the statute suggests that other types of hearings, such as a pretrial conferences, are included among events at which default could occur. Notably, non-appearance at either the initial severance hearing or the termination hearing would result in a potential delay of permanency if the Court lacked the power to proceed in the parent's absence.  This is not the case with non-appearance at status conferences or pretrial conferences.

occurred in this case. For this reason, the grounds for severance are well known by the court and the parties. Frequently, the relevant factual issues have already been explored and litigated, albeit in the context of a dependency.

¶46 In contrast, petitions for termination initiate entirely new legal proceedings. Under such circumstances, planning hearings, such as pretrial conferences and status conferences, gain elevated importance. This is because courts must organize the gathering of evidence and coordination of schedules for new litigation. In that context, a parent's failure to appear at such hearings has a greater potential to obstruct and delay the process for establishing the child's permanency.

¶47 For this reason, pretrial conferences have comparatively less importance in motion-initiated proceedings. Indeed, as the majority points out, they are frequently not necessary and, for reasons discussed above, a parents' non-appearance at them risks no delay whatsoever in establishing permanency. In assessing whether to sanction a parent for non-appearance at a hearing, the effect of that non-appearance on subsequent proceedings would be far from "illogical" consideration. It would be the primary consideration.

¶48 To be sure, the parallel termination statutes do not themselves articulate the purpose for the textual distinction between the types of hearings at which the parent may be defaulted. Thus, any explanation for variation—both the majority's and that posited here—involves judicial speculation. But we must apply the words the legislature chose, not those we think they should have chosen. *See Roosevelt Elementary Sch. Dist. No. 66 v. State*, 205 Ariz. 584, 592-93 ¶ 40 (App. 2003). At minimum, a plausible explanation exists for why the legislature established different default provisions for the two kinds of proceedings.

¶49 Indeed, the legislature has made plain its intent to enact distinct procedures for motion-initiated and petition-initiated severance proceedings. A.R.S. § 8-532(C) states: "This article [chapter 4, article 5; §§ 8-531 to 8-544] does not apply to termination proceedings conducted pursuant to article 11 of this chapter [§§ 8-861 to 8-864] . . . ." So directed, we demonstrate the greatest fidelity to legislative intent by applying

differently worded provisions in accord with their semantically distinct text.

¶50 The majority, however, reads § 8-863(C) as expressing identical intent to § 8-537(C), the default procedure applicable to petition-initiated termination adjudication hearings. In so doing, the majority places considerable weight on the legislative history of the statutory scheme. From that history, it concludes that the legislature must have tacitly intended to create a default provision for parents who fail to attend a pretrial conference in motion-initiated proceedings. But based on traditional principles of statutory construction and interpretation, consideration of legislative history should only be relied on to resolve unclear or ambiguous text. *See Metzler v. BCI Coca-Cola Bottling Co. of L.A., Inc.*, 235 Ariz. 141, 144-45 ¶ 13 (2014) (statute's language controls "unless an absurdity or constitutional violation results"). The majority has not identified any ambiguity in § 8-863(C). No language in that provision creates any confusion about whether a parent may be defaulted in a motion-initiated severance proceeding for failing to appear at a pretrial conference. Although the statute identifies a circumstance under which default may occur, non-appearance at a pretrial conference is not that circumstance.

¶51 Our traditional standards of interpretation subordinate legislative history to plain language for good reason: such history is often scant, fails to articulate the entire legislature's intent, and may be unclear in its intended application to specific legal problems. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts,* 369-90 (2012) (itemizing the interpretive limitations of divining legislative intent from "legislative history"). I submit we encounter those very limitations in ascribing statutory intent from the legislative history here.

¶52 The majority directs us to the language in the Senate's "Final Revised Fact Sheet" as expressing the legislature's intentions when it enacted the statutory scheme. But, as a threshold matter, that fact sheet only purports to express the intentions of the Senate's drafters—not those of the House of Representatives, whose vote was also necessary to pass it, or the Governor who signed it. Both were necessarily and primarily focused on whether they approved the procedures expressed by the words of § 8-863 itself. No individual legislator, in the House or the Senate, was

procedurally or legally confined to the rationale expressed in the Senate Fact Sheet.

**¶53** Furthermore, the fact sheet's reference to *Don L. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 556 (App. 1998), does not necessarily demonstrate any intention by the drafters to be constrained by the *specific* features of that case. Indeed, the fact sheet itself suggests that the Senate understood *Don L.* to describe a more general problem—"that the juvenile court lacked authority to sever parental rights by default in the absence of a court rule or statute granting that authority." Ariz. State Senate Fact Sheet for S.B. 1109, 44th Leg., 1st Reg. Sess. (Apr. 30, 1999). Thus, nothing in the fact sheet demonstrates any legislative intent that the parallel statutes, §§ 8-837(C) and 8-863(C), which provide such authority to juvenile courts, be read more expansively than the carefully-calibrated balance articulated therein.

**¶54** Furthermore, as the majority points out, in *Don L.*, the proceeding had been initiated by petition, 193 Ariz. 556, 557 ¶ 2, as all proceedings were at the time. *See* 1999 Ariz. Sess. Laws 1st Reg. Sess., ch. 81, § 19 (adding § 8-862(E), directing courts to order parties to file termination motion). The father had failed to attend a status hearing and was defaulted. *Don L.*, 193 Ariz. at 557 ¶ 3. The court of appeals reversed, determining that neither the statutes nor the rules provided for a default. *Id.* ¶ 8.

**¶55** To be sure, the petition in *Don L.* arose from a dependency proceeding, *id.* ¶ 2, and thus, to that extent would parallel the instant case. But the legislature responded to *Don L.* by enacting distinct provisions for terminations by motion and terminations by petition, each with its unique default language. In my view, we stand on uncertain ground to assume that the Senate's reference in the fact sheet to *Don L.* expresses a legislative intent that the two default provisions should be read as facsimiles.

**¶56** For the above reasons, I conclude that § 8-863(C) is subject to only one interpretation that pays primary allegiance to its text and pertinent context: a default is not authorized in a termination proceeding initiated by motion when a parent fails to appear at a pretrial conference.

**¶57**    Rule 64(C), however, is broader than § 8-863(C). And, it is subject to two plausible interpretations: that it conflicts with the statute by adding types of hearings the legislature deliberately omitted, or that it can be harmonized with the statute because it is an over-inclusive, omnibus notice provision, subject to the limitations of the statute. For the reasons that follow, it is best understood as the latter.

**¶58**    Rule 64 (C) requires the movant or petitioner to warn parents that "failure to appear at the initial hearing, pretrial conference, status conference or termination adjudication hearing, without good cause" may result in a finding that the parent has admitted the allegations in the petition or motion, and has waived the parent's legal rights. The next sentence requires a specific warning that, under such circumstances, "the hearing[] may go forward in the absence of the parent . . . and may result in the termination of parental rights . . . ." And, under the rule, the same notice—including the notice of potential forfeiture of rights for non-appearance at a pretrial conference—must be given in the context of terminations initiated by either petition or motion.

**¶59**    By its terms, then, Rule 64(C) requires the notice to warn parents, even those whose proceedings have been initiated by motion, that their rights may be forfeited by non-appearance at a pretrial conference. The rule therefore implies that the law authorizes such a forfeiture. Read this way, Rule 64(C) would add grounds for forfeiture not found in § 8-863(C). So construed, Rule 64(C) would constitute a supplementary forfeiture provision in contradiction to the statutory balance struck by the legislature in § 8-863.

**¶60**    But Rule 64(C) can also be plausibly read in conformity with its apparent contextual role: to facilitate the pre-existing statutory default scheme, set forth in §§ 8-537(C) and 8-863(C), by providing comprehensive and clear notice to parents of the potential consequences of non-appearance under either statute. Read in this manner, the notice's warning of forfeiture for non-appearance at pretrial conferences pertains only to parents whose rights are being terminated by petition, in accordance with §§ 8-533 and 8-537. The same warning is equally necessary, but over-inclusive, as to parents in motion-initiated proceedings who may be defaulted only if they fail to appear at a termination hearing. Notably, the drafters may have

19

viewed any over-inclusiveness as procedurally helpful given that such parents should appear at all hearings.

¶61        While both interpretations can be logically derived from the language of the rule, there are sound reasons to adopt the latter. First, Rule 64(C) plainly reads more as a notice statute than as an independent, supplementary default provision. It is entitled "Notice of Hearing" rather than "Grounds for Forfeiture" and its language is exclusively devoted to describing the contents of a "notice" rather than substantive grounds for forfeiture. Furthermore, had this Court intended to expand the grounds for forfeiture beyond those established by statute, it presumably would have done so in a separate subsection, rather than by implication from a sentence buried in a notice provision. Indeed, the juvenile rules do make direct provision for default in the immediately subsequent Rules 65 and 66, which squarely address the procedural features of initial and final termination hearings, respectively.

¶62        The remaining language in Rule 64(C) comprehensively addresses every possible default scenario: the notice must include advisories for terminations by "motion or petition," it must be served on "parent[s], guardian[s] or Indian custodian[s]," and it must contain the "location, date and time" of the initial termination hearing. In that context, one can view the rule as an omnibus notice provision, harmlessly over-inclusive in an effort to provide an exhaustive warning to parents whose rights may be terminated in their absence.

¶63        Perhaps most importantly, however, our jurisprudence provides clear direction as to which plausible interpretation of Rule 64(C) we should adopt. That precedent instructs that we should seek "to harmonize, whenever possible, related statutory and rule provisions." *Metzler*, 235 Ariz. at 144-45 ¶ 13; *State v. Hansen*, 215 Ariz. 287, 289 ¶ 7 (2007). If we interpret Rule 64(C) as a notice provision designed to facilitate § 8-863(C)—rather than as a supplementary forfeiture provision that would conflict with the statute—we would comply with that directive.

¶64        In summary, § 8-863(C) contains no language authorizing a parent's forfeiture of procedural rights for non-appearance at a pretrial conference. That omission was no oversight but rather the result of a

specific legislative directive to treat motions for termination differently than petitions for termination. Therefore, the juvenile court's finding—that Marianne had forfeited her right to attend the termination hearing by failing to attend the pretrial conference—was not a finding authorized by statute.

¶65          Nor was it a finding authorized by Rule 64(C). Although that rule can plausibly be construed as expressing the Court's intent to strike a different balance than the legislature, it can also be read to instead facilitate, but not expand, the legislature's default scheme with an exhaustive—and benignly over-inclusive—notice provision. The latter reading conforms best to the commands of our separation of powers jurisprudence and the evident textual purpose of Rule 64 understood as a whole.

¶66          I therefore respectfully dissent and would reverse the juvenile court's termination of Marianne's parental rights.